[File No. 6610.]

L. R. BAIRD, as Receiver of the Scandinavian American Bank of Minot, North Dakota, Respondent, v. J. N. ELLISON and Otto Ellison, Appellants.

(293 N. W. 794.)

Opinion filed July 20, 1940. Rehearing denied September 17, 1940.

*C. D. Aaker,* for appellants.

*George A. McGee,* for respondent.

CHRISTIANSON, J. This is an appeal from an order of the district court of Burleigh county denying an application made by the defendants, J. N. Ellison and Otto Ellison, to vacate judgments rendered against them. This action was brought to recover on the added statutory liability against various stockholders in the Scandinavian American Bank of Minot, North Dakota, which said bank, on November 29, 1924, was duly adjudged insolvent by the district court of Burleigh county.

The complaint alleges that the capital stock of the Scandinavian American Bank of Minot, North Dakota, was divided into shares of the par value of $100 each.

"That all of the authorized stock of said bank was issued to its shareholders, and that the above named defendants were shareholders of said bank at the date the same was closed and within one year prior thereto, owning shares therein respectively as follows:

| Name. | No. Shares. |
| --- | --- |
| H. P. Beckwith | 10 |
| Gertrude E. Davick | 4 |
| A. E. Elefson | 10 |
| Helen Ellis | 9 |
| J. N. Ellison | 4 |
| J. N. and Otto Ellison | 4 |
| Geo. Heger | 10 |
| J. Heger | 20 |
| Geo. H. Hollister | 10 |
| Ruth McGregor | 4 |
| M. R. Porter | 116 |
| Erick R. Ramstad | 35 |

"That each of the shareholders of said Scandinavian American Bank of Minot, North Dakota, thereby became indebted to the plaintiff to the extent of the amount of his stock therein, at the par value thereof, in the amounts hereinbefore set out.

"That the above named defendants have failed and refused to pay the amount of their added statutory shareholders' liability in said bank to the said receiver, and still fail and refuse to pay the same."

The case came on for trial before the district court on November 8, 1928. The plaintiff presented affidavits of service made by one Vern V. Anson wherein it was stated that said Vern V. Anson had served a summons and complaint in the above entitled action on Otto Ellison and J. N. Ellison, defendants in said action, on April 14th, 1926 at Minot, North Dakota, by delivering to and leaving with said Otto Ellison and with said J. N. Ellison personally true and correct copies of said summons and complaint.

The plaintiff also presented an affidavit of default. The trial court made findings of fact which embodied the allegations of the complaint set forth above. The court further found: "That J. N. Ellison has paid Four Hundred Dollars ($400) to be applied on his statutory liability on four shares, and that said defendant has not paid his statutory liability on four other shares; that Otto Ellison has paid Four Hundred Dollars, ($400) to be applied on his statutory liability on four shares, and that said defendant has not paid his statutory liability on four other shares; that the defendant, J. Heger has paid One Thousand Dollars, ($1,000) to apply on his statutory liability on ten shares, but has not paid his statutory liability on ten other shares."

On November 28, 1928, judgment was entered by the district court of Burleigh county against each of the defendants Otto Ellison and J. N. Ellison for the full assessment on four shares of the capital stock in said bank, namely, a judgment for $400 and interest and costs against each of said defendants. In May, 1932, the plaintiff caused a transcript of such judgments to be filed in the office of the clerk of the district court of Ward county. In May, 1933, the said defendants J. N. Ellison and Otto Ellison brought action in the district court of Ward county to vacate and set aside the judgments so rendered against them in the district court of Burleigh county. In the complaint in

such action they alleged, among other things, that the summons and complaint in the action in which the judgments had been rendered had never been served upon the said J. N. Ellison and Otto Ellison and that they had no knowledge that any judgments had been rendered against them by reason of the alleged service of said summons and complaint until years afterwards. The plaintiff Baird, as defendant in such action, interposed a demurrer to the complaint. The issues raised by the demurrer were argued before one of the judges of the district court of Ward county, and on October 14, 1933, such judge entered an order sustaining the demurrer, but notice of such order by service of a copy thereof was not given to the said J. N. Ellison or Otto Ellison or their attorney until in October, 1938. Thereafter the complaint in such action was amended and the said Baird, defendant in said action, again demurred to such complaint. In December, 1938, such demurrer was sustained and the action ordered dismissed and the said J. N. Ellison and Otto Ellison appealed from the judgment in such action and such appeal was argued at the same time the appeal under consideration here was argued. See Ellison v. Baird, ante, 226, 293 N. W. 793. After the entry of the judgment dismissing the action brought by the said J. N. Ellison and Otto Ellison to set aside and vacate the judgments rendered against them, they made motion in this action to vacate the judgments entered against them on November 28, 1928, on the ground, among others, that service of summons had not been made upon either of the defendants,—that consequently the court had no jurisdiction to enter any judgment against either of the defendants, and that the judgments entered were null and void.

The motion to vacate and set aside the judgments was heard and determined by a judge other than the one who rendered the judgments. Upon the hearing of the motion no witnesses appeared. There was no oral testimony. The proof adduced consisted of the record, and of affidavits. The judge who heard the motion to vacate and set aside the judgments had no knowledge of incidents that had occurred in the action, not reflected by the record. His decision rested alone upon the record and the affidavits which are before this court. To him the record "was as cold and lifeless as it is to us," and he was "no better qualified" by reason of having had a better opportunity to ascertain the

truth, and, hence, "to exercise discretion in the matter than this court." Braithwaite v. Aiken, 2 N. D. 57, 63, 49 N. W. 419, 421.

From the proof submitted upon the hearing of the motion to vacate the judgments it appears that Engle Ellison, the father of the defendants, Otto Ellison and J. N. Ellison, was the owner of twelve shares of the capital stock of the Scandinavian American Bank of Minot. Engle Ellison died in 1921 and the capital stock in such bank owned by him was thereafter distributed among his three sons so that the above named defendants, Otto Ellison and J. N. Ellison, each received four shares of said capital stock, and another son, Hildor Ellison, received the remaining four shares, and the certificate for the latter four shares of stock was issued in the names of Otto Ellison and J. N. Ellison, trustees. In an affidavit submitted by the District Manager of the defendant receiver it is said: "That at the time of the closing of said bank, four shares of stock stood in the name of J. N. Ellison, four shares in the name of Otto Ellison, and four shares of stock in the name of J. N. Ellison and Otto Ellison, Trustees."

Upon the hearing of the motion to vacate the judgment, it was established beyond doubt that the defendant Otto Ellison, on May 19, 1925, paid the amount of his additional liability on the four shares of stock which stood in his name at the time of the closing of the bank, and that the defendant J. N. Ellison, on August 29, 1925, paid the amount of added liability on the four shares which stood in his name at the time of the closing of the bank. In a memorandum decision the trial court said: "The evidence indicates that the defendants did pay their own double liability prior to the bringing of this suit, but it also appears that they were trustees for one Hildor Ellison who also owed some double liability."

The summons in the action is dated March 23, 1926, and recites that the complaint "will be filed in the office of the clerk of the district court of the Fourth Judicial District, in and for the county of Burleigh and state of North Dakota." This is the recital required to be made in a summons when the complaint is not served with the summons. Comp. Laws 1913, § 7423. The complaint was filed in the office of the clerk of the district court on March 25, 1926,—two days after the summons was issued. The summons was not filed in the office of the

clerk of the district court until November 28, 1928. There is attached to the summons as filed, certain affidavits and returns of service. There are five affidavits of service made by one Vern V. Anson to the effect that he served "the—summons—summons and complaint" on five of the defendants named in the action, including the defendants Otto Ellison and J. N. Ellison, at Minot, North Dakota, on April 14, 1926. These affidavits of service were made on a mimeographed form which recited that the affiant "served the—summons—summons and complaint in the above-entitled action on .............. one of the defendants in said action, on ........,...., 192.., at ............, North Dakota, by delivering to and leaving with said ............ a true and correct copy of said summons—summons and complaint." At the bottom of the mimeographed form of affidavits of service is found this parenthetical statement: "(Strike out words not applicable)." In the affidavits of service made by Vern V. Anson relating to the alleged service upon the defendants Otto Ellison and J. N. Ellison the words *not applicable* were not stricken out, so as said, the affidavits state that "he served—the summons—the summons and complaint" on the defendants "by delivering to and leaving with said (. . . naming the defendant) a true and correct copy of said summons—summons and complaint." The papers in the action were served upon two of the defendants by sheriff. The sheriff of Foster county made service on the defendant, J. Heger. In making return of such service, the sheriff utilized the same form of affidavit of service as that utilized by Vern V. Anson, but the sheriff struck out the words "summons and complaint" so that proof of service made by such sheriff recites the service of summons, and does not recite the service of the complaint. There is, also, in the record the return of the sheriff of Cass county of service upon the defendant Hollister and such return shows service of summons alone. The affidavits of service made by Vern V. Anson as to the alleged service upon the defendants J. N. Ellison and Otto Ellison did not contain the statement required by Rule 3 of the General Rules of Practice of the district courts (41 N. D. p. 710) which provides that whenever process is served personally by a person other than the sheriff or person designated by law, the affidavit of service "shall also state that the person making such service knew the person.

served to be the person named in the papers served, and the person intended to be served."

It appears from the affidavits submitted upon the motion to vacate the judgments that the defendants Otto Ellison and J. N. Ellison, as a part of their inheritance from their father also received shares of capital stock in a bank located at Hartlund, North Dakota, which bank also became insolvent and was administered by the defendant as receiver. The defendants also paid their added statutory liability upon the stock in such bank.

Each of the defendants states positively and unequivocally in his affidavit that the summons and complaint in the above entitled action were never, at any time, served upon him by said Vern V. Anson or by any other party or by any officer or constable, and that at no time was any other process, notice, or motion, of any name, nature or description in the above entitled action ever served upon him.

As said, it is established beyond controversy that the defendant Otto Ellison paid his additional liability as a stockholder on the four shares of stock in the Scandinavian American Bank on May 19, 1925, and that the defendant J. N. Ellison paid his additional liability on the four shares of stock in the said bank which stood in his name on August 29, 1925. The action against the several stockholders to recover the added liability was not brought until March 23, 1926.

The district manager of the plaintiff receiver made an affidavit which was submitted in opposition to the affidavits of the defendants. There was attached to such affidavit certain correspondence between the district manager and the defendants Ellison; but no part of this correspondence antedated the bringing of the action. In such affidavit no reference is made to any conversation with either of the defendants relating to a stockholder's liability on the part of the defendants, either on the four shares which stood in the names of each of them, or on the four shares which, according to the affidavit of the district manager, at the time of the closing of the bank "stood in the names of J. N. Ellison and Otto Ellison, trustees." The first letter referred to in the affidavit of the district manager is addressed to J. N. and Otto Ellison and is dated July 23, 1926. This letter reads as follows: "I refer to the double liability in connection with four shares of stock that

.was.issued, to you gentlemen as trustees. I believe that we served Summons upon you a short time ago, and I recall that Mr. Anson stated to me that you would pay this in the very near future."

The affidavit of the district manager does not state whether this letter was mailed or transmitted to the defendants in some manner other than by mail. There is no showing that the defendants received the letter. The next letter referred to by the district manager in his affidavit is dated March 15, 1929, and is addressed to Otto Ellison. This letter reads as follows: "Mr. Ross states that you do not recall the service upon you in connection with the above captioned bank. This service was made by Vern V. Anson on April 14th, 1926, and it occurs to me that this item should be settled without further delay."

This letter was answered by the defendant J. N. Ellison on March 16, 1929, as follows:

"I spoke to Mr. Ross when he brought in the judgments and told him that it was the first that I knew that we would be sued on my brother Hildor's bank stock. As I have transacted all business for this trusteeship, I positively know that I have never been served with any summons or notices whatever. And the fact that the judgment was made by default was evidence that I knew nothing whatever of it.

"My brother, Otto, is in Miami· and will not return until sometime around May 15th or June 1st, and I wish you would defer the matter until that time. Also, my attorney has been out of town since I returned from New York and I have not had an opportunity to talk it over with him.

"Trusting that this will be satisfactory, I beg to remain."

On March 28th, 1929, the district manager wrote the defendant J. N. Ellison to the effect that he had requested the attorney for the plaintiff to look up the file in the office of the clerk of the district court in Bismarck, and that the records indicated that service was made on the defendant, Ellison, by Vern V. Anson on April 14th, 1926. On the day following the defendant J. N. Ellison replied as follows: "I have your letter of March 28th. I am absolutely positive that no service has ever been made on me by Vern V. Anson or anyone else, in the matter of the Scandinavian-American Bank stock which was held by H. B. Ellison and which a judgment was obtained against J. Norman Ellison and Otto C. Ellison, trustees.

"I am turning over all of the correspondence to Mr. Aaker and will ask him to handle it for me and trust that you will hold up the judgment until he can go into the matter for us."

The plaintiff also submitted in opposition to the motion to vacate the judgments an affidavit by Vern V. Anson. In such affidavit Anson states that "he made personal service of the summons and complaint in the above-entitled action on J. N. Ellison, also known as Norman Ellison, and on Otto Ellison;" that he has a distinct recollection of making such service; that he went to the store in Minot operated by such defendants "for the purpose of making such service" and found J. N. Ellison on the second floor of such store and "delivered the summons and complaint to him and asked him where he would find Otto Ellison," and that "J. N. Ellison told him that Otto was out to lunch and would return about 2 P. M.; that he called at the store about 2:30 P. M. the same day and met Otto Ellison in front of the store on the first floor and handed him a copy of the summons and complaint and carried on a conversation with him for several minutes."

As said, there are in the record five affidavits of service made by Vern V. Anson. These several affidavits state that he served the "summons—summons and complaint" on five of the defendants named in the title of this action on the 14th day of April, 1926, at Minot, North Dakota. Among the five defendants named in such affidavits of service are the defendants J. N. Ellison and Otto Ellison. The affidavits of service are all sworn to before a Notary Public who, according to Anson's affidavit, was employed in the office of the district manager of the plaintiff receiver at that time. Four of the affidavits, including the one relating to the service on Otto Ellison, bear date as having been sworn to on April 14, 1926,—the date on which the affidavits state that service was made. But, the affidavit of service on J. N. Ellison recites that it was sworn to on April 19th,—or five days subsequent to the others.

The record discloses that the defendants J. N. Ellison and Otto Ellison are men of substance. In the affidavit of the district manager, it is stated that the defendants "were then and had formerly for many years been outstanding business men in the city of Minot, North Dakota, owners and proprietors of what is known as The Fair Store, a

large department store in the city of Minot, North Dakota, and were the owners of the building in which said business was conducted and a large apartment house and other valuable pieces of real estate in the city of Minot, North Dakota, a conservative estimate of the value of which would be approximately $500,000." The defendants paid their added statutory liability on the stock which stood in their own names long before suit was brought. They were not the type of men who would be likely to pay no attention to an action that was brought against them. According to the affidavit of Anson, service was made upon the two defendants at two different times and under circumstances which must have indicated to them that some recovery was sought against them growing out of the liquidation of the Scandinavian American Bank. The record discloses that the first time their attention, was called to the fact that judgment had been rendered against them they denied in the most unmistakable terms that they had been served with a summons or other papers in the action. Notwithstanding the statements in the affidavits of Anson that he served a copy of the complaint upon the defendants, it is hardly probable that he did so. The summons negatives the idea that a copy of the complaint was attached to the summons; and, as said, in the instances where service was made on other defendants by two different sheriffs, the returns of service show that the summons alone was served and that no copy of the complaint was served. The affidavits of service made by Anson were, to say the least, carelessly made. He did not examine the affidavits with sufficient care to strike out the words which the parenthetical direction at the bottom suggested be stricken out so as to make the affidavits conform to the facts in each particular case. Literally, the affidavits of service made by Anson state that he served a summons and in addition a summons and complaint upon the defendants. The complaint sought recovery upon a liability clearly in excess of that which each of the defendants owed, in any view of the case. The complaint alleged the existence of a statutory liability upon eight shares of capital stock of the bank—four shares standing in the name of J. N. Ellison and four shares standing in the name of J. N. and Otto Ellison, when in fact there were only four shares standing on the books of the bank in the names of J. N. Ellison and Otto Ellison,

trustees, on which any liability remained unpaid. It does not seem likely that both defendants would have overlooked the suit that was brought against them or failed to take steps to protect their interests if they had been served with process; and it seems still less likely that they would have failed to do so if a copy of the complaint had been served upon each of them, which alleged the existence of a liability which had been discharged and did not exist. It will be noted that in the letter dated July 23, 1926, which the district manager of the plaintiff receiver states was written by him to J. N. and Otto Ellison, the district manager refers to "the double liability in connection with four shares of stock that was issued to you gentlemen as trustees," and then states: "I recall that Mr. Anson stated to me that you would pay this in the very near future." As said, Anson made an affidavit wherein he refers to conversations which he claims to have had with both J. N. Ellison and Otto Ellison at the time he says he made service of summons and complaint upon them, but he makes no claim that he had any conversation with them regarding their statutory liability, or that they made any promise to pay the liability on the four shares issued to them as trustees. There is nowhere in any of the affidavits any showing that any discussion was had with either of the defendants relating to their liability as stockholders.

The great question here is: "Were the appellants served with summons in this action, or were the judgments rendered against them without notice, because of the want of service of summons?" The trial court said, "It requires stronger proof than was offered here to rebut the proof of service in a case like this where the parties have known for eight years or more that a judgment had been entered, and when it means a total loss of a claim plaintiff could have recovered on if they had timely moved to set aside the judgment."

We are unable to agree with the trial court. The proof of service in this case is the affidavit of a private person. Odland v. O'Keeffe Implement Co. 59 N. D. 335, 339, 229 N. W. 923, 924. On a motion to vacate the judgments it was competent for defendants to rebut and impeach such proof of service. Odland v. O'Keeffe Implement Co. supra; Kaull v. Johnson, 56 N. D. 563, 218 N. W. 606; 3 Freeman, Judgments, 5th ed. p. 2557; 50 C. J. pp. 575, 576; 34 C. J. pp. 270, 271. See also Darling & Co. v. Burchard, 69 N. D. 212, 284 N. W.

856. In our opinion the facts and circumstances established upon the motion to vacate the judgments overcame the proof of service, and established beyond substantial doubt that the defendants were not served with process. This being so, the judgments were, and are, invalid.

"No valid personal judgment can be rendered by a court of any state unless the person against whom it is rendered is served with process within that state, or appears voluntarily and submits himself to the jurisdiction of the court. 12 C. J. pp. 1227, 1228; 33 C. J. p. 1082; 12 Am. Jur. 290. 'The fundamental requisite of due process of law in judicial proceedings is the opportunity to be heard. . . . To hold one bound by the judgment who has not had such opportunity is contrary to the first principles of justice.' Baker v. Baker, E. & Co. 242 U. S. 394, 403, 61 L. ed. 386, 392, 37 S. Ct. 152, 155. 'Notice to a party whose rights are to be affected by judicial proceedings is an essential element of due process.' 12 C. J. p. 1228; 12 Am. Jur. pp. 289, 290, 293, 296, 297." Darling & Co. v. Burchard, 69 N. D. 212, 284 N. W. 856, 862.

"A judgment without any form of notice to, or service upon, defendant is wholly void, unless he appears. Defendant must be accorded an opportunity to present his defense.

"Formal process or notice served in the manner authorized or required by law is essential to support a judgment; mere informal knowledge of the pendency of the action is not sufficient." 33 C. J. pp. 1079, 1081.

The judgments being invalid because the court had no jurisdiction over the persons of the defendants were not rendered valid by mere lapse of time. "Time does not confirm a void act." Comp. Laws 1913, § 7273. We are aware of no rule of law or equity which requires a party against whom a void personal judgment has been rendered to institute judicial proceedings to cancel or vacate such judgment. "The party procuring a judgment against another without due process of law, takes it at his peril, and the party against whom it is taken is not bound to apply, within a year after its rendition, to set it aside and be allowed to answer the complaint." Lapham v. Campbell, 61 Cal. 296; Odland v. O'Keeffe Implement Co. 59 N. D. 335, 229 N. W. 923, supra; Ellison v. Baird, ante, 226, 293 N. W. 793. Certainly there is no basis in this case for any claim of estoppel. When the judg-

ments were first called to the attention of the defendants, they asserted without any equivocation that they had never been served with any papers in the case. They at no time receded from this position.

The first, and the principal, ground urged by the defendants for vacating the judgments is the failure to serve summons upon them, and the consequent lack of jurisdiction of the court to render any judgment. But, the defendants also included in the motion to vacate the judgments the further grounds that the judgments had been "entered through a fraud practiced on these defendants and upon the district court of Burleigh county;" and that "these defendants are entitled to a vacation of the said judgments on the merits of the alleged claim of the plaintiff" for the reason that the liability of said defendants had been paid in full "prior to the time of the alleged service of the summons and complaint herein." Each of the defendants served as a part of the moving papers a verified answer to the complaint. This operated as a voluntary appearance in the action, and conferred jurisdiction over the persons of the defendants from the date of such appearance. Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095.

The order appealed from is reversed, and the cause is remanded for further proceedings conformable to law.

NUESSLE, Ch. J., and MORRIS and BURKE, JJ., concur.

BURR, J. (dissenting in part). The crucial point is whether the appellants have shown the trial court erred in holding service of the summons had in fact been made upon defendants in April, 1926. The burden is upon the defendants to show this.

The trial court, in weighing the affidavits and other proof offered, came to the conclusion that the defendants, though eminently reputable men, and undoubtedly stating the facts as they recalled them, had entirely forgotten an event which happened away back in 1926; and this forgetfulness persisted, even after the one who claimed to have served the summons set out in detail how the service had been made.

The majority of the court find the trial court was in error. I do not agree with this view or that the defendants have shown that degree of certainty necessary to overcome the determination of the trial court. For this reason, I dissent from that part of the decision.

However, this holding being the decision of this court, then it is clear the defendants, by answering, have submitted to the jurisdiction of the court; and therefore, the matter in controversy should be determined as if the first issue had not arisen.