# Shippen v. Bailey.

June 21, 1946.

Joseph M. Hayse and Nellie S. Hayse for appellant.
Willie T. Puckett and Charles W. Logan for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

This is a habeas corpus proceeding by a mother to take from their father the custody and control of two children, a girl 15 and a boy 13 years old.

Before stating the facts, it may be well to observe that as it relates to this kind of a case, the proceeding partakes of the incidents of a suit in equity, and is considered to be one in rem, the child being the res, and the inquiry extends far beyond the issues that are ordinarily involved in a habeas corpus proceeding. The decision may not be based necessarily upon the legal right of the petitioner to have a child released from the custody of one who has him as though he were a captive, but the court deals with a matter of equitable nature and decides the issue from the view of the best interest and welfare of the children, as the present conditions seem to require. That is the supreme consideration, irrespective of the rights and wrongs of the child's contending parents, although their natural rights are entitled to due consideration. 25 Am. Jur., Habeas Corpus, Secs. 78, 80. There is, however, in the present case a question of legal right under a judgment of an Ohio court awarding the custody of these children to the mother exclusively.

The breaking up of this home seems to be one of the tragedies of the economic depression of the early period of the last decade. In 1933, Evans W. Shippen, of Louisville, could find no work. His wife went to the home of a sister in Rockport, Indiana, and their younger child was born there. The husband remained in Louisville seeking work and doing whatever odd job he could find. When the baby was a few weeks old the mother took her two children to the home of her parents on a farm in the Western part of Pennsylvania. The stories of the two parties as to who abandoned whom is contradictory, but it seems to us the better and supported evidence of this record relieves the husband of guilt of a legal abandonment. Hard times continued and the wife's family became very hostile toward her husband. He did not send any money for the care of his family because he had none. He testifies that his wife urged him to send funds for the purpose of having the little girl's teeth fixed. He was then working at a small hotel in Louisville for his room and board. A guest whom he

knew, who apparently at the moment was not able to take care of himself, according to Shippen, turned over a ring to him to keep. He took the man's overcoat and hat and went to Cincinnati where he sold the ring for $50 and went to see his wife and children. He testifies that he gave her $25 and told her where the money came from and she rebuked him for it but took the money nevertheless. She denies all of this and maintains that he had never sent her any funds until a year or so afterward when he forwarded her $10 and she returned it indignantly. While in Pennsylvania Shippen was arrested and returned to Louisville, pleaded guilty to grand larceny, and went to the penitentiary for one year. After he served his term, he was restored to citizenship, but continued to be scorned by his wife and her family.

During this period the wife went to Cleveland, Ohio, about 150 miles from her parents' home, and went to work. She had the children with her in that city for a brief period, but found the arangements for their care to be unsatisfactory and returned them to her mother's home. In 1936, she sued for divorce and custody of her children in Ohio. Shippen was brought before the court by constructive service through publication. The decree was granted, but Shippen had no actual notice or knowledge of it until sometime in 1940. There is conflicting evidence as to his visitations or attempts to visit his wife, and children, but it is certain he was never welcome and was scorned by her and her people. He should not be censured too much for seeming inattention. He volunteered for the Army in 1942 and sometime after his induction was AWOL. He was courtmartialed and served a period at hard labor. However, he eventually saw much service as a paratrooper and was given an honorable discharge December 25, 1945. While in the service he made an allotment for his children. Upon his discharge he sent them $100 that they might come to visit him. They were not permitted to do so.

Sometime during this period the wife married again, one Bailey, and has continued to live in Cleveland, but she has kept in touch with her children, visiting them frequently and regularly, making substantial contributions for their support, while they have lived with her mother on the farm in Pennsylvania. Her mother is now 75 years of age and in poor health. Two bachelor sons live with her and these children. Although

their father claims that their health, particularly their eyes, and teeth of the little girl, had been neglected, we agree with the chancellor that the charge was not established. The chancellor saw the children and observed in the course of his opinion that they appeared to have been well cared for. Their mother and her husband testified that they desire to take the children with them to Cleveland. They are living in a large house with one of her sisters, who also testified to a willingness to have the children with them. However, the mother's present husband indicated their expectation was to take the children when their grandmother ceased to be able to look after them. She is employed as a beautician and she and her present husband have a joint income of about $100 a week.

Times have changed for the better for this man. He lives with a sister and her husband, Dr. Bosler, a dentist, in a nice home and neighborhood, in Louisville. He has a partnership with his brother-in-law in a small business of printing and selling a certain kind of stationery. He receives now $30 weekly compensation and the business is profitable. There is no claim that Shippen was ever addicted to drink, or other bad habits, and by the Chief Probation Officer of Jefferson County and others he established a good reputation, excepted only by his conviction of a felony, above described. He has paid his entire debt to Society for his offense, the wrong being freely and frankly admitted under mitigating circumstances. There is no contradiction that he committed it for his child's benefit. He should not be forever punished by the forfeiture of his children.

In April, 1946, Shippen went to see his children in Pennsylvania. He admits that he misled their grandmother when he took his two children away and brought them to Louisville. They are living with him at his sister's home, but it has been planned if he can keep his children to move into another house nearby, which belongs to Dr. Bosler. He qualified as their statutory guardian, the girl being over 14 years of age, asking that he be named. He has made a recorded assignment to them of two-thirds of an estate he will shortly receive from his deceased father.

So far as the prospective custody of the children is concerned, the plans of the father and the mother are not materially different. The conditions would be sub-

stantially the same, including educational opportunities and cultural environments.

The judgment of the Ohio court with respect to the custody of the children is not of controlling or, indeed, material importance. It was rendered 10 years ago when the children were mere infants. Moreover, it may be that they were not within the jurisdiction of the Ohio court, as they were then living with their grandparents in Pennsylvania, so that the judgment was ineffectual. See Callahan v. Callahan, 296 Ky. 444, 177 S. W. 2d 565. As we held in that case, and as is quite uniformly held elsewhere, custody provisions of a divorce decree have no extra-territorial effect (if any effect at all) upon questions of proper custody arising under circumstances materially changed with reference to the welfare of the child. Note 160 A. L. R., 408. Of course, a change of the conditions of the parents enters into that question.

But the manner in which this father obtained the custody of these children can not under any circumstances be sanctioned by the courts. He had no right to take the law into his own hands and take his children away from the actual custody of their grandmother. They were in the constructive custody of their mother, to whom the Ohio court had awarded them. To adjudge their custody to him under these circumstances would put the stamp of judicial approval upon that wrongful act. Another influential fact is that the mother and her people have carried the burden and the responsibility of rearing and caring for these children from their baby-hood, while he has had no part in it. Now as they are approaching maturity it would hardly be fair or just to give him their exclusive care and custody or to break them away from their home ties.

The appellant complains bitterly that the chancellor refused to hear either child as a witness. They were competent and important. They have reached an age when they should have been permitted to express their desires or choice. Deciding the case without their testimony smacks of prejudgment. But the chancellor, as expressed in his opinion, assumed they would testify that they wanted to stay with their father. He disregarded the assumed choice on the idea that they may have been influenced by the present conditions and that the usual wish of adolescents who have been reared in the country is to live in the bright lights of a city.

The conditions in the home of their grandmother in Pennsylvania appear to be changing. She is infirm and aged, and the children are reaching maturity. It is possible that their welfare may require that they be given into the actual custody of their mother or of their father or divided between them. They are bound to both parents by the ties of nature, "bone of their bone and flesh of their flesh." As we have indicated, at this time the father seems to have become settled and is able to do for his children what he has not heretofore been able to do. It appears in this record that there is nothing whatever against his moral character save and except the conviction of the felony 13 years ago. But as we have also observed, that condition is not such as to require the courts to hold that he forfeited his rights as a father. He is not without remedy, for he has recourse to the courts of Pennsylvania or Ohio, wherever the children may be domiciled.

We are constrained, therefore, to affirm the judgment.