## Spurlock v. Dolan.

January 28, 1947.

764

C. A. Noble for appellant.

Napier & Napier for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing in part, affirming in part.

Appellee Dolan, petitioner in a habeas corpus proceeding begun in the Perry county court, sought possession and custody of two children, Bernice and Howard Dolan, the first named about fourteen and the latter eleven years of age. Spurlock was named respondent. It was alleged in the petition that the mother of the children had died in 1946; that the father had deserted them and had been absent from the State for the past six years. The father was Claiborn Dolan, a brother of the petitioner. Spurlock was the stepfather of the children, and since the death of the mother they had resided with him at his home in a mining town in Perry County. It was alleged that Spurlock had four of his own children residing in the home, one a young man; that it was not for the best interest of the children; that they were not in proper environment, or living under proper and wholesome influence; that the stepfather is not a blood relation, and is not the proper person to have custody of the infant children; not suited to give them proper care, training and education; that he is a miner; has no property or income aside from his wages. It was alleged (on information) that respondent indulged in strong drink.

He set out his domestic situation in his home in Edgewater, Maryland, where he lived with his wife, and said that it was their desire to take the children in their custody, because he thought they were better suited to care for them in their spacious home. They had no children and it was alleged that it was their desire and purpose to adopt the Dolan children. In short by his pleading he asserted that because he was a brother of

the father of the children he had superior right to custody, and that his domestic and financial situation would redound to their welfare if he be given custody and control.

Respondent denied the allegations of the petition in all material respects. He alleged that the father of the children was an habitual criminal, having been convicted of several felonies, and had served terms in the penitentiary. It was alleged, and was proven and uncontradicted, that in 1940, while Claiborn Dolan was a convict, his wife obtained a divorce and she and respondent were married, and with the children had lived together until her death in 1946, and since that time he had continued to care for, feed and clothe them as if they were his own, seeing to it that they attended school. He asserted that the mother prior to her death had requested him to keep the children, and that he was a fit person to have their custody, and he intended to do so, and rear and educate them properly. He pointed out that if petitioner be awarded custody he would remove them from the State and jurisdiction of the State's courts.

Considerable proof was taken, and upon submission the court found as a fact that the stepfather was financially able to care for the children from his earnings, and had done so for the past six years "without assistance or offer of assistance from petitioner." It appeared also that the girl, then about fifteen years of age, had not only expressed a desire to remain with the stepfather, but had undertaken to select him as her guardian. The court entered the following very sensible but somewhat unusual order: "April 2, 1946. The children are to remain for the time being with the defendant until June 1, 1946, and if by said time the plaintiff and his wife furnish to this court proof from the Welfare Department of the State of Maryland that they are fit and proper persons to adopt said children and have their care and custody, and further that they have an estate in real property unencumbered to the value of $6,000, then on June 1, 1946, which is the approximate end of the present school term, the plaintiff may have possession of said children and take them to Maryland and retain their custody until September 1, 1946, upon his executing bond in the sum of $3,000 with surety to be approved by this

court. However, if the plaintiff and his wife shall before the 1st of September 1946, in a court of competent jurisdiction, adopt said children, then the covenants of said bond shall be released, but to be forfeited in the event he does not return said children on or before September 1, 1946.''

As we construe this order its effect was for respondent to retain custody of the children unless and until petitioner should comply with the conditions, that is, by showing by proof other than was adduced on the trial, that respondent and his wife were fit and proper persons to adopt the children, and to show what unencumbered estate petitioner and his wife had, and to execute bond, to be released by September 1, 1946, if adoption proceedings had been successfully carried out.

Spurlock is here on direct and Dolan on cross-appeal, each contending superiority of right, and each that their respective custody would best subserve the interests of the children. Appellant insists that the petitioner being a resident of a foreign State, though a brother of the father, a refugee from justice, is not entitled to maintain a writ of habeas corpus to take the children from him, he being in loco parentis, and remove the children from this State's jurisdiction, relying somewhat on Thomas v. Sprinkle, 299 Ky. 839, 187 S. W. 2d 738. As we read that opinion it does not have the effect of denying the right of this petitioner to maintain such action. It seems to hold that a parent, next of kin or one standing in loco parentis may do so. We held that the degree of right, not to maintain the action, but to have the custody is to be measured by the infant's welfare as distinguished from superiority of right or of legal commitments, and this case must turn as did the cited case, on the questions of welfare of the children. This is the duty and function of courts of equity.

As we view the case, it is hardly necessary to go into minute details of the proof adduced, a matter which the trial court was better situated to measure, and whose conclusions must be given some weight in determining what was the best for the children. That the judge was not entirely satisfied that he could properly award the custody to petitioner is shown by the judgment supra.

The proof, to our minds, shows very clearly that

as far as living quarters are concerned, petitioner is much better situated than respondent to give the children more wholesome living quarters. The same is true as to the matter of income of the respective parties. The court did not go to the extent of reverting to the fact that respondent was living in the three room house, which afforded shelter for four or five persons in addition to the Spurlock children, a situation which is not any too wholesome.

We are not inclined to question at all the testimony of petitioner as to his financial and domestic situation, his purpose and intentions, but are inclined to the opinion that when he comes into this State seeking to obtain the custody of children with the intention of retaining their custody, he should, as was indicated by the trial court, make some showing beyond what was shown as to his and his wife's suitability to take and rear these children.

As the case stands, while in some respects he shows ability and better surroundings, he failed in supporting the allegations as to the character and reputation of respondent, who with the daughter, he introduced as his own witnesses. Aside from this, respondent brought forward proof that he not only had supported the children, properly fed and clothed them; that they attended school and Sunday school, and that it was his purpose to continue to do so. It was shown that he was a miner, earning on an average of more than $200 per month, and was a certified minister of the Gospel. He introduced several witnesses who said that he properly fed and clothed the children, and who expressed the opinion that he was a proper person to have their care and custody. There are some circumstances which may have impressed the mind of the trial court. Petitioner had never approached respondent, or the children, to discuss his proposal with them. During all the years following the unfortunate brother's situation he had done nothing toward their welfare or interest; the purpose manifested by his movement, which he says was reached after some investigation by his wife, was somewhat belated.

It is gathered from the proof that respondent has had the care and custody of these children since April 1940, when he married the mother. He evinces a strong

desire to keep them. He has carried the burden and responsibility for more than six years, while petitioner has had ho part in it. As a matter of fairness and justness it would hardly be right to give their exclusive custody to petitioner when they have reached an age to be helpful, unless it were clearly shown to the trial court that it would greatly redound to their welfare.

We are impelled to repeat what we said in Shippen v. Bailey, 303 Ky. 10, 196 S. W. 2d 425. The writ of habeas corpus, as it relates to this kind of case, is a proceeding which "partakes of the incidents of a suit in equity, and is considered to be one in rem, the child being the res, and the inquiry extends far beyond the issues that are ordinarily involved in a habeas corpus proceeding. The decision may not be based necessarily upon the legal right of the petitioner to have a child released from the custody of one who has him as though he were a captive, but the court deals with a matter of equitable nature and decides the issue from the view of the best interests and welfare of the children, as the present conditions seem to require."

It is apparent from the judgment of the trial court that the matter presented to him disturbed him no little, as it has us, and we agree with him that the facts shown did not there justify his adjudging the exclusive custody to petitioner or to deprive respondent of their permanent custody. We have no way of knowing the present situation, but whatever it may be, both under the habeas corpus law and in equity, the matter is not entirely closed since the courts are open at all times to look to the interest and welfare of infant children.

From what has been said we are of the opinion that the relief sought on the cross-appeal be denied, and that the judgment be reversed on respondent's appeal for further consistent proceedings.

Reversed on appeal; affirmed on cross-appeal.