# Lowery v. Fayette County Children's Bureau et al.

March 9, 1948.

Chester D. Adams, Judge.

818

J. A. Edge for appellant.

Paul H. Mansfield for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, Paul Lowery, by habeas corpus proceedings, sought the custody of his three children, Mary Emma, aged 8, Paul 6, and Carl C., 5. In his petition filed in the circuit court he alleged that the children were placed in the custody of a parental home by some proceeding begun and had in the Fayette County Juvenile Court by the mother without his knowledge or consent. That their detention by respondents was without authority of law, and they were being unlawfully detained and imprisoned either in the Children's Home or by Margaret Devine, or at the home of C. B. Daly in Fayette County. It was alleged that the children were not committed by any court or Judge with jurisdiction to commit; that the father is the only person entitled to their custody, and that those holding present custody have denied his request to release the children to him. He prayed for writ which was issued.

The county attorney on behalf of the Juvenile Court demurred to the petition, and on behalf of that court and the designated defendants, responded that the children had been committed by proper orders to the Bureau by proceedings had in the Juvenile Court, and are now in its custody and in custody of the Juvenile Court.

We find in the record, by order of the circuit court, the original record of proceedings in the Juvenile Court,

but find it unnecessary to do more than point out that beginning in 1941 and continuing into 1942, warrants were issued against the father charging acts of neglect resulting in delinquency. In July of 1945, the mother filed a petition in the county court stating that her five children, all infants, were without means of support and were being neglected, asking the Court to make inquiry and take steps to see that the children were cared for. The record shows that the mother was in ill health and unable to provide for them. The Court upon proof and records of investigating officers entered an order placing the custody of the three above named children in the Children's Bureau. Later the Bureau made arrangements with Mr. and Mrs. Daly whereby they were to take and care for the two boys, the Bureau paying them $1 a day for each child.

On the habeas corpus hearing, from oral proof and Juvenile Court record and reports of investigating officers, it appeared that the father had twice been before the Court on neglect proceedings and had been ordered to see that the children were cared for. It appears that he at one time was ordered to pay $4.50 per week toward their keep, and it is uncertain whether or not he ever complied with the order. It is certain that from 1941 up to the time of the hearing in August 1945, though at times working, he had done little or nothing toward their support. It is fair to him to say that during part of this period he was crippled and unable to work. In furtherance of his claim he undertakes to show a different situation. Petitioner's mother, who formerly lived in Lexington, and had owned a large rooming house, in the latter part of 1946 or early in 1947 sold or traded her Lexington property and bought a 560 acre farm in Breckenridge County. She had paid on this farm $25,000 and owed a balance of $20,000, to be paid in installments (including interest) at the rate of $1800 per year.

It appears from the proof that she took possession in March 1947, and it was agreed that her son, the petitioner, was to live at her home, and that he and one tenant were to aid in carrying on the farm work, on a share the crop basis. She said they proposed to cultivate about 300 acres of corn, 6½ acres of tobacco, 100 acres of potatoes, and several acres of garden products, quite

an undertaking for three persons, two of whom showed little or no experience in farming.

The petitioner (and the mother) described the house, saying that it had no water or electric lights, though it was said that there was a movement to have an electric line in the neighborhood, and the son would put in the water system. The home was two and a half miles from school and church, with no bus transportation within a mile, though both petitioner and his mother said they could and would see that the children were kept in school.

During petitioner's testimony it developed that he had on several occasions been in jail on minor charges, and several times for failure to provide for his children. He had once been convicted of a felony. He admitted that he had talked to Miss Devine, Executive Secretary of the Board, and had agreed for her to take the children, though he thought the custody was to be temporary. The record shows that petitioner had been addicted to drink, but he said that he had not drunk any recently. The mother of the children had died in April of 1946, and, to the credit of the grandmother, she had visited the children frequently and assisted them materially. The father had not turned the children over to the grandmother after his wife's death because she had expressed a desire that he should not do so.

Miss Devine testified as to her investigations made both prior to and after the filing of the habeas corpus petition. Her report shows an investigation relative to the suitability of the home to which it was purposed to take the children as well as persons who were seeking to have control and custody. Her report was adverse. She also testified that the two boys who were in the Daly home were well cared for; the Dalys were reliable people, with good income, and sent the children to school and church. She was positive in her opinion that it was to the best interest of the children not to turn them over to the father and grandmother, but to leave them in the custody of the Juvenile Court and the Bureau. The Dalys also testified that the children are well cared for and "are healthy and well behaved now." They agreed that they objected to visits from the father and grandmother, because these visits would

disturb and upset the children. The girl at the Home was well cared for and well behaved.

In plaintiff's petition it was charged that the children were being illegally held because of certain defects in procedure in the Juvenile Court; specifically that no summons had been served on the father in the delinquent proceedings, as required by Sec. 199.050, KRS, hence any order made by the Court was void; that the response in habeas corpus proceedings was insufficient, and his demurrer should have been sustained, because there was not a compliance by respondents with the provisions of Criminal Code of Practice, Sec. 410, and subsections 1 to 5, all of these being technical objections. And in brief these objections are stressed at length, with not too much said as to the merits of the case, that is, the welfare and best interests of the children.

Judge Adams in his usual careful manner heard and measured the proof including the documentary evidence and concluded that the welfare of the children would best be subserved by leaving them in the custody of the Bureau and the Juvenile Court, which he held had jurisdiction of them when the 1945 orders were entered, and still had jurisdiction. Gilbert v. Kentucky Children's Home Society, 205 Ky. 496, 266 S. W. 17.

In his written opinion the Court agreed that the record showed that the father had not been served with summons, but from the record concluded that he had actual knowledge of the proceedings and proposal to rest their custody in the Home. He thought that the judgment of the Juvenile Court was valid, but said "if mistaken in this it is the duty of this court of equity to consider all the testimony and to make such orders as may be best or necessary for the welfare of the children," and we quite agree with the Judge in his reasoning and conclusions.

Here we have a case where the father on his initiative took the children into a court having equity jurisdiction, charged at all times with the duty, both in law and reason, of doing what to the court seems best for the welfare of the children. These children were not prisoners, nor restrained of liberty in the sense the word is usually employed, but from proof were being

well cared for, better cared for than the court and others qualified to know thought they would be, at least at the time of hearing, if turned over to petitioner. The Court was no doubt mindful of the idea that the farming project was at the time in an experimental stage; also, perhaps that sufficient time had not elapsed to demonstrate fully that the father had so far mended his ways as to be the proper custodian of his infant children, even with the assistance of the grandmother. It may be that with the passage of time the situation may be such that petitioner might be more successful in his endeavor.

Neither in a Juvenile Court nor in a court of equity are infants ordinarily treated as criminals; they are looked upon as persons of tender age, not able to look to their own welfare. The chancellor so treated the matter before him and had ample authority for his treatment and conclusions.

The universal rule for the treatment of children of tender ages, where the situation is as appears here, is laid down in 25 Am. Jur., Habeas Corpus, p. 204, and is substantially as follows: When the writ is for the purpose of determining the right of custody of children, the inquiry goes much further than the issues usually involved in habeas corpus proceedings, and does not ordinarily involve the question of personal freedom. The court in solving the question of proper custody of children deals with a matter of equitable cognizance. The court is not bound by any mere legal right of parent or guardian. Such cases are to be determined not upon the legal right of the petitioner or one seeking relief from unlawful restraint as in the case of adults, but on the court's view of the best interest of those whose welfare requires that they be entrusted to the custody of one person or another. New York Foundling Hospital v. Gatti, 203 U. S. 429, 27 S. Ct. 53, 51 L. Ed. 254. Therefore, a court is in no way bound to deliver a child into custody of any claimant or of any person, but should in the exercise of a sound discretion, after consideration of all the facts and circumstances do that which is deemed best for the child's welfare, which is the supreme consideration, irrespective of the rights or wrongs of its contending parents, although natural rights are to be given consideration.

That courts of equity, as well as Juvenile Courts, are charged with the duty of looking to the welfare of infant children is too well settled to require citations. We have in more instances than one applied the universal rule above mentioned. In Shippen v. Bailey, 303 Ky. 10, 196 S. W. 2d 425, we wrote that a habeas corpus proceeding partakes of the incidents of a suit in equity, considered to be in rem, the child being the res, and the issue extends far beyond that presented in the ordinary habeas corpus proceeding. The decision of the Court is not based altogether on the legal right of the petitioner to have custody or release to him as though he were a prisoner. The court deals with the matter and decides what is best for the child "as the present conditions seem to require." To the same effect see Spurlock v. Dolan, 303 Ky. 763, 199 S. W. 2d 441.

Adhering to this established principle we are compelled to hold that the chancellor correctly decided that the status of the children should not be at this time altered, hence the judgment is affirmed.