## Smith v. Lloyd.

January 13, 1950.

864

Herschel M. Sutton for appellant.
H. M. Grigsby for appellee.

CHIEF JUSTICE SIMS—Reversing.

Mrs. Aileen Smith, by writ of habeas corpus filed in the Washington County Court, sought the custody of her two daughters, Gloria Jean and Sarah Ann, six and five years of age respectively. The evidence was heard orally by the county judge, who refused to grant the writ and the mother appeals.

Mrs. Smith's first husband, whose name was Gregory, failed to support her and their two little girls and she divorced him. She was without funds and could not support her children so on July 24, 1948, she signed a paper whereby she relinquished control of the children to C. C. Lloyd and wife. Mr. Lloyd is a preacher in the Church of Christ and he and his wife operate a Mission Home for girls in Washington County. The paper signed by Mrs. Smith reads:

"Springfield, Ky.

July 24, 1948.

"I, Mrs. Aileen Gregory, of Corbin, Kentucky. Mother of Gloria Jean, Sarah Ann Gregory. Ages, July 2, 1943, 5 years; Sarah Ann, March 17, 1945, 3 years. Respectfully state that as the physical mother of the above named girls do hereby release my custody of them to Mr. and Mrs. C. C. Lloyd. The Mr. Lloyd, being Supt. Treas. of Christian Mountain Mission, Inc., ("Girl-Town") of Springfield, Washington County, Kentucky. A domestic incorporation for charities.

"It is further agreed by this said Mr. & Mrs. Lloyd that they will furnish to these above named children, Clothing, Food, Medicine, and a home for them until

they are self supporting in life. Also it is further agreed by this said, C. C. Lloyd and his wife, to send these named girls to the common school until they finish in the grades and also high school.

"It is agreed to not allow these girls to be adopted out by any person or persons, but this Institution is to have the custody under this release of these children until they are self supporting. It is agreed their mother may pay $25.00 per month and take them.

" (s) *Aileen Burke Gregory*

Their mother.

"Witness:

(s) *C. C. Lloyd.*"

Subsequently, the mother married Arthur Smith, who owns a farm of 40 acres near Corbin, Ky., which is well-improved and he stated it is worth $13,000. Mr. Smith also owns a truck with which he works at a saw-mill and is amply able to support his two step-children, which he testified he is willing to do. The Smiths have been married only about ten months but have a baby fourteen months old, and it is urged in appellee's brief this fact shows their home is not a proper one in which to take these two little girls. Recently, we have written that acts of indiscretion by a woman with a man she soon married, in the absence of evidence of promiscuity, did not brand her as an unfit person to have the custody of her young children. Ruttencutter v. Ruttencutter, 293 Ky. 556, 169 S. W. 2d 604; Clark v. Clark, 298 Ky. 18, 181 S. W. 2d 397; Price v. Price, 306 Ky. 214, 206 S. W. 2d 924; Hager v. Hager, 309 Ky. 803, 219 S. W. 2d 10.

The record shows that the Home is operated in or near the town of Springfield by Mr. and Mrs. Lloyd and consists of one building, 56 by 52 feet. It is constructed of concrete blocks and has two stories. The first story contains three rooms with concrete floors, wh'le the upper story is one big room with a wooden floor. There are no bathrooms or inside toilets in this building which houses 25 or 26 girls rang'ng in ages from 3 to 19 years. It is heated by two stoves and the walls are not plastered. The Lloyds occupy a small frame house right near the large concrete building. Mr. Lloyd is away a

good part of his time soliciting funds to maintain the Home and Mrs. Lloyd stays with the children as much as she can, but retires to the small frame house at bedtime, leaving the children alone. She frankly states that the older girls help her care for the younger ones, otherwise the 25 children could not be accommodated in the Home. Rev. Lloyd testified that he has plans to install bathrooms in the Home and to plaster the walls as soon as he can secure the necessary funds.

We direct no criticism at Mr. Lloyd and his good wife. Doubtlessly they are doing a good work with the limited means and facilities they have. But 25 children crowded into a house of these dimensions, constructed of concrete blocks with unplastered walls, heated with two stoves, and without bathrooms, could not be comfortable. There is no adult with the children throughout the night to supervise and care for them. Furthermore, the record is silent as to what recreational facilities are provided for the children or as to what religious or moral training they receive, although the Lloyds both testified the children are well and happy. It is apparent that Gloria Jean and Sarah Ann will receive better attention in the comfortable home of their mother and stepfather than they can be expected to receive in the Mission Home, to say nothing of the benefit they will derive from their mother's love and personal care.

Even where both parties are equally fitted to care for a child, the natural right of the parents ordinarily prevails. Matlock v. Elam, 262 Ky. 631, 90 S. W. 2d 1015; Altemeier v. Rachford, 291 Ky. 845, 165 S. W. 2d 848. The rule is expressly applicable where an institution is aligned against the natural parent. Evans v. Evans, 232 Ky. 155, 22 S. W. 2d 578. A contract by which the parent releases the custody of a child to another, which contains an agreement that the parent will not reclaim the child, has been held valid only to the extent that the parent has surrendered the superior right to custody vested in her by the Statutes. But such a contract does not prevent the court from determining what is best for the welfare of the child, regardless of the contract. Staggs v. Sparks, 286 Ky. 398, 150 S. W. 2d 690; Galilean Children's Home v. Ball, 308 Ky. 319, 214 S. W. 2d 403.

Appellee insists that the writ of habeas corpus will

not lie in this character of case, but that Mrs. Smith's action should have been brought upon the writing she signed, citing 25 Am. Jur. "Habeas Corpus," sec. 19, p. 155; Jones v. Com., 269 Ky. 772, 108 S. W. 2d 812; Smith v. Henson, 298 Ky. 182, 182 S. W. 2d 666; Thomas v. Sprinkle, 299 Ky. 839, 187 S. W. 2d 738. The text and first two cases cited are to the effect that the writ cannot be used in lieu of an appeal or to obtain a new trial. The Thomas case was one in which an aunt attempted by habeas corpus to take two small children from the possession of the widow of her deceased brother. We there wrote that the aunt showed no prima facie legal right to the custody of the children, therefore she could not maintain the writ. But the opinion pointed out that the technical requirements incident to obtaining the writ generally have been disregarded where the actual question involved the welfare of infants. See 25 Am. Jur. "Habeas Corpus," secs. 79 and 80, pages 204 et seq., and Lowery v. Fayette County Children's Bureau, 306 Ky. 817, 209 S. W. 2d 487, where it is said that the writ may be invoked to determine who is entitled to the custody of a child; and when it is, the court's real concern is to determine what is for the best interest of the child.

The judgment is reversed with directions that the Washington County Court enter one giving the custody of these two children to their mother, since the writ of habeas corpus in this character of case partakes of a suit in equity and is considered to be an action in rem with the child the res. Spurlock v. Dolan, 303 Ky. 763, 199 S. W. 2d 441; the Lowery case, 306 Ky. 817, 209 S. W. 2d 487.