**Elzie SCOTT and Carrie Scott,**
**Appellants,**

v.

**Ruby Darlene SCOTT, Appellee.**

Court of Appeals of Kentucky.

Oct. 17, 1969.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellants.

William Allender, Allender, Simmons & Robertson, Bowling Green, for appellee.

CULLEN, Commissioner.

Appellee Ruby Darlene Scott instituted *habeas corpus* proceedings to recover possession of her two children, David and Loretta, ages 11 and 13 respectively, from their paternal grandparents, the appellees Elzie and Carrie Scott. The circuit court entered judgment awarding possession to Ruby. The grandparents have appealed.

The sole ground of appeal is that the trial court erred in refusing to permit evidence to be introduced as to what would be to the best interests of the children as concerns *permanent custody*. The grandparents had tried to inject the issue of right to permanent custody into the case by filing a "counterclaim" asking that they be awarded custody. However, the circuit court refused to permit evidence to be introduced on that issue.

In previous opinions this court has endeavored to make it clear that habeas corpus procedure, in situations involving disputes over possession or custody of children, ordinarily should be invoked only to determine who has the right to immediate posses-

sion, and the proceedings should be confined to that issue. The question of permanent custody should be decided in a proceeding in equity. See Walden v. Johnson, Ky., 417 S.W.2d 220; Chamblee v. Chamblee, Ky., 248 S.W.2d 422. It is true that in some cases, where the parties and the trial court *treated* a habeas corpus proceeding as the equivalent of a suit in equity for permanent custody, this court did not hold the procedure invalid. See Shippen v. Bailey, 303 Ky. 10, 196 S.W.2d 425; Lowery v. Fayette County Children's Bureau, 306 Ky. 817, 209 S.W.2d 487. However, those decisions indicated merely an acquiescence in irregular procedure and by no means an approval of such procedure.

If a habeas corpus proceeding may at will of the person having possession of the child be converted into an equity suit for permanent custody, the result may be (as attempted in the instant case) that a person will unlawfully take possession of a child from the parent or other legal custodian and then hold that possession while the question of future permanent custody is litigated. This enables a wrongdoer to profit by his own wrongdoing.

We conceive that in the normal situation the person having the right of immediate possession of a child should enjoy that right during the course of any litigation in equity of the right to permanent custody. Of course in a case where the child would be in danger of harm by remaining in the possession of the legal custodian, the child welfare authorities, or the juvenile court, or the court of equity by injunctive process, can provide the necessary protection. The remedy is not for a private individual simply to take the child by force or compulsion.

We find no place in habeas corpus procedure for any device such as the "counterclaim" undertaken to be asserted by the appellants. It is a special statutory procedure in which the only recognized pleadings are a petition and a response. KRS 419.020, 419.070. The procedure is design-

ed for the determination of one limited question—the right to immediate possession —and it would be a perversion of the procedure to allow other issues to be injected by whatever form of pleading.

The facts of the instant case are particularly appropriate for application of the principles above discussed. Ruby and her husband had for a number of years maintained a home, with their children, in Bowling Green, Kentucky. The paternal grandparents also had their home in Bowling Green. Ruby's husband died on July 23, 1969, and for the next *four days* Ruby and the children stayed at the home of the grandparents. Ruby's mother and sister then arrived from California and Ruby made preparations to return with them and the children to her own home in Bowling Green, but the grandparents refused to allow her to take the children with her. She left alone and on *the following day* instituted the habeas corpus proceeding. Ruby thus was in the classic position of a person with full legal right to immediate possession of children who had been deprived of that right by unlawful act.

The appellants make complaint of the fact that Ruby intends to move to California with the children. There being no immediate threat to the children's wellbeing (which the trial court specifically found) it would seem that Ruby would have the full right to make the proposed move. Cf. Byers v. Byers, Ky., 370 S.W.2d 193. Present such a threat there would have been appropriate legal remedies, as hereinbefore pointed out.

The judgment is affirmed.

MILLIKEN and OSBORNE, JJ., concur.

REED, J., concurs by separate opinion in which NEIKIRK and PALMORE, JJ., join.

REED, Judge (concurring).

I concur with the result reached in this case, but I question the legal approach used in the majority opinion.

The majority opinion clearly recognizes that the past decisions of this court have not been consistent in applying the procedural limitations of the remedy of habeas corpus to child custody cases. In some cases we have advocated a strictly limited procedure by which the issue is confined to the "right of immediate possession of a child." In other cases, we have approved the action of the trial court or of the parties in treating habeas corpus proceedings as an avenue to determine permanent custody of the child concerned.

If the majority opinion stands for the proposition that habeas corpus proceedings in child custody cases must be strictly limited to the "right of immediate possession of the child" as it appears to hold, then I disagree.

The employment of the form of habeas corpus in a child custody case is not for the purpose of testing the legality of confinement or restraint as contemplated by the ancient common-law writ, or by statute, but the primary purpose is to furnish a means by which the court, in the exercise of its judicial discretion, may determine what is best for the welfare of the child; the decision is reached by a consideration of the equities involved in the welfare of the child, against which the legal right of no one, including the parents, is allowed to militate. Howarth v. Northcott, 152 Conn. 460, 208 A.2d 540, 17 A.L.R.3d 758. The controversy does not involve the question of personal freedom, because an infant is presumed to be in the custody of someone until it attains its majority. The matter is really equitable in nature. See 39 Am.Jur.2(d), Habeas Corpus, Sec. 148, pp. 280, 281.

In this case, the children lived with their mother and father in Bowling Green, Kentucky. The father died on July 23, 1969, and for the next four days the children and their mother stayed at the home of the paternal grandparents in Bowling Green. The mother made preparations to return to her own home in Bowling Green with her children, but the paternal grandparents refused to surrender them. The paternal

grandparents undertook to plead in the mother's habeas corpus action that the best interest of the children required a change of custody. I would not apply super technicalities in such a situation. The children, the mother and the grandparents were all long-time residents of Warren County, Kentucky. Upon the showing made before the trial court, there is nothing to indicate that the present legal custodian of the children who is their natural mother should be deprived of the immediate possession of them until the final question of custody is determined.

A trial court may make a determination of who is entitled to the immediate possession and physical custody of children as a preliminary matter under the label of equity as easily as this can be done under the label of habeas corpus. In the troublesome interstate cases, and particularly in those where the presence of the child is merely casual, temporary or briefly transient, the court may decide that the best interest of the child requires that a court more familiar with the circumstances and better able to afford continuing supervision should decide permanent custody.

Nevertheless, I am too haunted by recent reported instances of revolting, sadistic treatment of children, even to the extent of murder, to tie the hands of a court to act in the best interest of the child because of the restrictions of an ancient common-law writ which was never designed or intended to apply to the custody of infants.

Therefore, I concur in the result because the trial judge carefully determined that there was no danger to the children. Hence, as a preliminary matter, it would therefore appear that the present legal custodian of the children should retain their possession. Nevertheless, I do not agree with the legal proposition that the matter of ultimate custody could not be tried out in these proceedings and by this circuit court.

NEIKIRK and PALMORE, JJ., join me in this concurring opinion.