BAKER, INDIVIDUALLY AND AS ADMINISTRA-TRIX OF BAKER, *v.* BAKER, ECCLES & COM-PANY ET AL.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 115.   Argued December 19, 1916.—Decided January 8, 1917.

The rule that the personal estate of an intestate has its *situs* at his domicile, and is subject to be administered and distributed accord-ing to the domiciliary laws, is merely a rule of the common law, which the States may adopt, modify or reject, as their policies dictate.

Each State has the power to control and administer the personal assets of an intestate found within her borders, such as debts due from a local corporation or the shares of its stock, to satisfy the rights of her own citizens in the distribution of such assets.

No State, therefore, has the power, by probate or other proceedings *in rem*, to fix the status as to administration, and determine the course of devolution, of personal property of an intestate situate beyond her borders and within the domain of another State.

Under the Fourteenth Amendment, the courts of one State are without power to determine by an action *in personam* the domicile of a de-cedent or the devolution of his personal assets situate in another State, as against persons, residents of the latter, who do not appear in the proceedings and are notified by publication only.

The full faith and credit clause of the Constitution and the act of Congress passed pursuant to it do not entitle a judgment *in personam*

to extra-territorial effect, if it be shown that it was rendered without jurisdiction over the person sought to be bound.

162 Kentucky, 683, affirmed.

THE case is stated in the opinion.

*Mr. John A. Pitts,* with whom *Mr. E. W. Ross* was on the briefs, for plaintiff in error.

*Mr. Charles K. Wheeler,* with whom *Mr. Daniel Henry Hughes* and *Mr. James Guthrie Wheeler* were on the briefs, for defendants in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

The federal question presented in this record is whether the Court of Appeals of Kentucky gave such faith and credit to certain judicial proceedings of the State of Tennessee as were required by Article IV, § 1, of the Constitution, and the act of Congress passed in pursuance thereof. Act of May 26, 1790, c. 11, 1 Stat. 122; Rev. Stats., § 905.

The facts are as follows: Charles Baker died in September, 1912, the owner of certain real and personal property in Hardin County, Tennessee, and of 270 shares of stock of Baker, Eccles & Company, a Kentucky corporation, of the par value of $27,000, and a claim of several thousand dollars against that corporation for surplus profits. He left a widow, Josie C. Baker, now plaintiff in error, and a mother, Augusta H. Baker, one of the defendants in error. He appears to have left no children or descendants, nor any considerable indebtedness, and the personal estate, if distributable according to the laws of Tennessee, would go entirely to the widow; if distributable according to the laws of Kentucky, it would go one-half to the widow, the other half to the mother. The place of his domicile, admittedly determinative of the law of distribution, was in controversy.

Shortly after his death the widow applied to the County Court of Hardin County, Tennessee, for letters of administration. The proceedings were *ex parte*, and her application was granted, the order of the court appointing her administratrix reciting that at the time of his death the residence of Charles Baker was in that county. Afterwards, and in December, 1912, the widow presented to the same court a settlement of her accounts as administratrix, and an order was made reciting that it appeared from proof that Charles Baker died intestate, and at the time of his death was a resident of Hardin County, Tennessee, and that he left no children or descendants of such surviving, but left surviving his widow, the said Josie C. Baker, and under the laws of Tennessee she, as widow, was entitled to all of the surplus personal property; whereupon it was ordered that she as administratrix transfer and deliver to herself as the widow of the deceased all of the personal estate in her possession, including the stock in the Kentucky corporation, the certificates for which she held. Subsequently, and on December 28, 1912, the widow individually and as administratrix filed in the Chancery Court of Hardin County, Tennessee, her bill of complaint against Mrs. Augusta H. Baker, the mother, as a non-resident of Tennessee and a resident of the State of Kentucky, and also against several persons who were residents of Tennessee, setting up her appointment as administratrix, averring that her husband died intestate a resident of and domiciled in Tennessee, leaving his widow as his sole heir and distributee, and his mother and a brother his only heirs at law. The bill further set up the widow's ownership of the stock in Baker, Eccles & Company, and averred that the mother was asserting an interest in one-half of the personal estate left by the intestate, upon the theory that he died a resident of Kentucky and that under the laws of that State the mother was entitled to one-half of his surplus personal estate.

The prayer was (*inter alia*) that the mother be brought before the court in the manner provided for non-residents and be required to assert whatever claim she might have to the estate left by the deceased; and that it might be adjudged that Charles Baker died a resident of Tennessee, and that complainant as his widow was the sole distributee and entitled to all of his personal estate.    Upon the filing of the bill an order of publication was made citing Augusta H. Baker as a non-resident to make defense upon a day named, and, she having failed to appear, the bill was taken for confessed against her, and eventually a decree was made "that the said Charles Baker at the time of his death was a citizen of and had his domicile at Savannah, Tennessee, and that the complainant as his widow is his sole distributee, and as such entitled to all of the personal estate of the said Charles Baker, after payment of such debts as were owed by him at the time of his death," and also that the title to the stock of Baker, Eccles & Company was in complainant, and that she was entitled to have a new certificate or certificates in her own name issued by the corporation in lieu of the certificates issued to said Charles Baker, and was entitled to receive from the corporation the amount of the accumulated profits and surplus and other amounts due from it to the decedent.

Meanwhile, the County Court of McCracken County, Kentucky, had granted letters of administration to Mrs. Augusta H. Baker, the mother, and she as such administratrix filed a petition in the McCracken Circuit Court for a settlement of the estate, making the widow and Baker, Eccles & Company defendants.    The widow did not appear, and a judgment was rendered that Charles Baker died a resident of McCracken County, Kentucky, and that under the law of that State the mother and the widow were each entitled to one-half of the surplus of the personal estate.    The corporation was directed to cancel the 270 shares of stock issued to decedent and reissue

one-half of these to the widow, the other half to the mother. This judgment has only historical importance, since the Kentucky Court of Appeals in the present case held it invalid as against the widow because of failure to comply with the local law respecting notice to her.

In June, 1913, the widow, individually and as administratrix of Charles Baker, began a suit in equity in the McCracken Circuit Court, which resulted in the judgment now under review. Baker, Eccles & Company was made defendant. The widow's petition, after setting up the orders and judgments of the Tennessee courts and alleging her sole ownership of the personal estate of the deceased by virtue thereof, prayed that the corporation be required to transfer to her individually the 270 shares of stock adjudged to her by the Tennessee chancery decree, and also prayed judgment for $11,429.17, the alleged indebtedness due from the corporation to her husband at the time of his death. Baker, Eccles & Company filed an answer putting in issue all the averments of the petition. Mrs. Augusta H. Baker, the mother, came into the suit by an intervening petition, in which she averred that Charles Baker died a resident of the State of Kentucky, and that under the laws of that State she was entitled to one-half of the shares of stock and of the debt sued for, invoking the McCracken Circuit Court judgment as an adjudication to that effect. She further put in issue the validity of the orders and judgments in both the Tennessee courts, averring that so far as they determined that Charles Baker died a resident of that State and that his widow was entitled to the whole of his personalty after payment of his debts, they were void, because neither of the Tennessee courts had jurisdiction to make such orders or judgments. The pleadings having been made up, evidence was taken on the issue of fact as to the domicile of Charles Baker at the time of his death. Upon this evidence, the records of the judicial proceedings above mentioned, and a show-

ing of the pertinent Tennessee law, the case was submitted for hearing, and it was adjudged that the widow's petition be dismissed.  The widow appealed to the Kentucky Court of Appeals, and that court, having determined the judgment of the McCracken Circuit Court in the mother's administration suit to be invalid as against the widow, held that the judgments of both Tennessee courts were invalid as against the mother because entered without process of law as against her; and then, passing upon the question of fact as to the domicile of Charles Baker, found upon the evidence that he was domiciled in the State of Kentucky and his personalty was distributable according to the laws of that State, and affirmed the judgment, with a modification directing the lower court to enter a judgment that Charles Baker died a resident of Kentucky, that his mother and his widow were each entitled to one-half of his personal estate situate in Kentucky at the time of his death after the payment of his debts, that Baker, Eccles & Company should cancel all certificates of stock issued to Charles Baker, and reissue one-half of these to the widow and the other half to the mother, and that the lower court embody in the judgment such other matters as would, after the payment of debts, distribute equally between the widow and the mother all other personal estate situate in Kentucky of which Charles Baker died possessed.  162 Kentucky, 683.  To review this judgment upon the federal question, the widow brings the case here upon writ of error.

No question is made by defendants in error but that the Tennessee courts had general jurisdiction over the subject-matter, nor that the proceedings were in conformity with the Tennessee statutes respecting practice.  The sole question is whether they were entitled under the Constitution of the United States and the act of Congress to recognition in the courts of Kentucky as adjudicating adversely the mother's asserted right to share as distributee in the

personal property situate in Kentucky, or as conclusively determining the fact of the domicile of the decedent as affecting that right, in view of the failure of the Tennessee courts to acquire jurisdiction over her person or over the corporation, Baker, Eccles & Company.

It is the fundamental contention of plaintiff in error that the personal estate of an intestate decedent is a legal unit, having its *situs* at the owner's domicile, that the title to the whole of it, wherever situate, is vested in the duly qualified domiciliary administrator, and not in the distributees, and that its distribution is governed by the law of the domicile of the deceased owner. *Wilkins* v. *Ellett,* 9 Wall. 740; 108 U. S. 256. Conceding that such is the general rule of law, it is so not because of any provision of the Federal Constitution, but only because the several States, or most of them, have adopted it from the common law into their respective systems. And the question remains, How is the fact of decedent's domicile to be judicially ascertained as a step in determining what law is to govern the distribution? Obviously, if fundamental principles of justice are to be observed, the ascertainment must be according to due process of law, that is, either by a proceeding *in rem* in a court having control of the estate, or by a proceeding *in personam* after service of process upon the parties to be affected by the judgment.

We have no concern with the effect of the Tennessee judgments upon the distribution of so much of decedent's personalty as was situate within that State. The present action affects only the ownership of shares of stock in a Kentucky corporation having no *situs* outside of its own State so far as appears, and a claim of indebtedness against the same corporation. For the purpose of founding administration, it is commonly held that simple contract debts are assets at the domicile of the debtor, even where a bill of exchange or promissory note has been given as evidence. *Wyman* v. *Halstead,* 109 U. S. 654, 656. The

State of the debtor's domicile may impose a succession tax. *Blackstone* v. *Miller*, 188 U. S. 189, 205. It is equally clear that the State which has created a corporation has such control over the transfer of its shares of stock that it may administer upon the shares of a deceased owner and tax the succession. See *Matter of Bronson*, 150 N. Y. 1, 9; *Matter of Fitch*, 160 N. Y. 87, 90; *Greves* v. *Shaw*, 173 Massachusetts, 205, 208; *Kingsbury* v. *Chapin*, 196 Massachusetts, 533, 535; *Dixon* v. *Russell*, 79 N. J. L. 490, 492; *Hopper* v. *Edwards*, 88 N. J. L. 471; *People* v. *Griffith*, 245 Illinois, 532. The rule generally adopted throughout the States is that an administrator appointed in one State has no power *virtute officii* over property in another. No State need allow property of a decedent to be taken without its borders until debts due to its own citizens have been satisfied; and there is nothing in the Constitution of the United States aside from the full faith and credit clause to prevent a State from giving a like protection to its own citizens or residents who are interested in the surplus after payments of debts. All of which goes to show, what plaintiff in error in effect acknowledged when she brought her present action in a Kentucky court, that the Tennessee judgments had no effect *in rem* upon the Kentucky assets now in controversy. She invokes the aid of those judgments as judgments *in personam*. But it is now too well settled to be open to further dispute that the "full faith and credit" clause and the act of Congress passed pursuant to it do not entitle a judgment *in personam* to extra-territorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound.

This rule became established long before the adoption of the Fourteenth Amendment, as the result of applying fundamental principles of justice and the rules of international law as they existed among the States at the inception of the Government. Notwithstanding that *Mills* v.

*Duryee* (1813), 7 Cranch, 481, 484,—where, as the opinion shows, the defendant had full notice of the suit, was arrested, and gave bail,—was by some courts interpreted as holding that irrespective of such notice the act of Congress required a judgment under all circumstances to receive the same faith and credit in every other State as it had in the State of its origin (*Field* v. *Gibbs* [1815], Pet. C. C. 155, 158; Fed. Cas. No. 4766, 9 Fed. Cas. 15, 16; *Commonwealth* v. *Green* [1822], 17 Massachusetts, 515, 546), the view soon came to prevail in the state courts that the case was not authority for so broad a proposition, and that whenever a judgment of a state court was produced as evidence, the jurisdiction of the court rendering it was open to inquiry, and if it appeared that the court had no jurisdiction the judgment was entitled to no faith or credit.[1]

Mr. Justice Story, who wrote the opinion in *Mills* v. *Duryee*, in his treatise on the Conflict of the Laws, published in 1834 (§ 609), declared that the "full faith and credit" clause and the act of Congress did not prevent an inquiry into the jurisdiction of the court to pronounce the judgment, and this view was adopted and made the basis of decision by this court in *D'Arcy* v. *Ketchum* (1850), 11 How. 165, which was followed by *Thompson* v. *Whitman*, 18 Wall. 457, 459, with a review of many cases.

During the same period, however, it occasionally was

---

[1] *Borden* v. *Fitch* (1818), 15 Johns. (N. Y.) 121, 143, 144; *Aldrich* v. *Kinney* (1822), 4 Conn. 380, 383; *Hall* v. *Williams* (1828), 6 Pick. (Mass.) 232, 242–245; *Miller* v. *Miller* (1829), 1 Bail. (S. C.) 242, 248; *Hall* v. *Williams* (1833), 10 Me. (1 Fairf.) 278, 287; *Wernwag* v. *Pawling* (1833), 5 Gill & Johns. (Md.) 500, 507. See also *Phelps* v. *Holker* (1788), 1 Dall. 261, 264; *Curtis* v. *Martin* (1805), 2 N. J. L. (Pen.) 399, 405, 406e; *Rogers* v. *Coleman* (1808), 3 Ky. (Hard.) 413, 415; *Kilburn* v. *Woodworth* (1809), 5 Johns. 37, 41; *Fenton* v. *Garlick* (1811), 8 Johns. 194, 197; *Shumway* v. *Stillman* (1825, 1831), 4 Cow. 292, 294; 6 Wend. 447, 449, 453; *Starbuck* v. *Murray* (1830), 5 Wend. 148, 156; *Bissell* v. *Briggs* (1813), 9 Mass. 462, 468; *Whittier* v. *Wendell* (1834), 7 N. H. 257.

intimated, if not held, by some of the state courts, that a personal judgment effective within the territory of the State could be rendered against a non-resident defendant who did not appear and submit himself to the jurisdiction, provided notice of the suit had been served upon him in the State of his residence, or had been published in the State within which the court was situate, pursuant to the provisions of a local statute. See *Smith* v. *Colloty*, 69 N. J. L. 365, 371. As was said by Mr. Justice Field, speaking for this court in *Pennoyer* v. *Neff*, 95 U. S. 714, 732, it is difficult to see how such a judgment could legitimately have force even within the State. But until the adoption of the Fourteenth Amendment (1868) this remained a question of state law; the effect of the "due process" clause of that Amendment being, as was held in the case just mentioned, to establish it as the law for all the States that a judgment rendered against a non-resident who had neither been served with process nor appeared in the suit was devoid of validity within as well as without the territory of the State whose court had rendered it, and to make the assertion of its invalidity a matter of federal right.

The fundamental requisite of due process of law in judicial proceedings is the opportunity to be heard. *Louisville & Nashville R. R. Co.* v. *Schmidt*, 177 U. S. 230, 236; *Simon* v. *Craft*, 182 U. S. 427, 436; *Grannis* v. *Ordean*, 234 U. S. 385, 394. To hold one bound by the judgment who has not had such opportunity is contrary to the first principles of justice. And to assume that a party resident beyond the confines of a State is required to come within its borders and submit his personal controversy to its tribunals upon receiving notice of the suit at the place of his residence is a futile attempt to extend the authority and control of a State beyond its own territory.

So far as the case for plaintiff in error depends upon the adjudication of domicile by the County Court of Hardin County, Tennessee, for the mere purpose of appointing

an administratrix, it is controlled by *Thormann* v. *Frame*, 176 U. S. 350, and *Overby* v. *Gordon*, 177 U. S. 214, 227. But, it is pointed out, in this case the county court went beyond the bare appointment of an administratrix, and proceeded to a settlement and distribution of the estate. Moreover, plaintiff in error relies not merely upon this judgment, but upon the decree in the chancery court of the same county, which in form specifically determined her exclusive right to the Kentucky personalty. It results, however, from what we have already said that this right could not be conclusively established by any Tennessee court as against a resident of Kentucky who was not served with process and did not appear therein, and that the Kentucky courts did not go counter to the Federal Constitution and the act of Congress in refusing to give faith and credit to the Tennessee judgments.

In many forms, and with much emphasis, the plaintiff in error presses the argument *ab inconvenienti*. Starting from the proposition that the entire personalty of an intestate decedent wherever in fact located is a unit, having its legal *situs* at the owner's domicile, and that its distribution ought to be in accordance with the law of that domicile, it is argued: How is it possible to judicially determine that domicile under the theory of the Kentucky Court of Appeals in the case of an intestate entitled to personalty in several States having different laws of distribution, and with parties claiming to be distributees residing in different jurisdictions? Assuming a lawful grant of administration in each State wherein part of the personalty is located and some of the possible distributees reside, how, it is asked, is any one of these administrators, or any one of the claimants of a share in the whole estate, to have the place of the intestate's domicile settled authoritatively and the lawful distributees ascertained? The answer is clear: Unless all possible distributees can be brought within the jurisdiction of a single court having authority

to pass upon the subject-matter, either by service of process or by their voluntary appearance, it must in many cases be impossible to have a single controlling decision upon the question. In some cases, the ideal distribution of the entire personal estate as a unit may thus be interfered with; but whatever inconvenience may result is a necessary incident of the operation of the fundamental rule that a court of justice may not determine the personal rights of parties without giving them an opportunity to be heard.

*Judgment affirmed.*