**Vada J. WALDEN, Appellant,**

v.

**Joe H. JOHNSON et al., Appellees.**

Court of Appeals of Kentucky.

April 21, 1967.

Rehearing Denied Aug. 29, 1967.

William E. Allender, Duncan & Allender, Bowling Green, for appellant.

Douglas Carter, Paul Carter, Abe P. Carter, Tompkinsville, for appellees.

CLAY, Commissioner.

In this habeas corpus proceeding, wherein appellant sought to obtain possession of Timothy Paul Johnson, a six-year-old child who was residing with appellees, the writ was denied. The case presents a most unfortunate controversy between the child's paternal aunt (appellant) and his paternal grandparents (appellees), and involves unusual circumstances.

The child's parents resided in Indiana and he was born there. His mother died in 1961. His father died February 10, 1966. Three days later appellant brought the child to Monroe County, Kentucky, for the burial

of his father there. Appellees assumed control of the child and refused to permit appellant to take him back to his former home in Indiana.

Two days later in Indiana the father's will was probated. In that will he appointed appellant as guardian of his child. The following day an Indiana probate court appointed appellant guardian "to take physical custody of said minor child" and she immediately qualified as guardian.

Shortly thereafter she made an abortive trip to Kentucky to obtain the child. On March 2, 1966, the appellee grandmother was appointed guardian by the Monroe County Court. On March 16, 1966, this habeas corpus proceeding was commenced.

■ The trial court, we think properly, recognized that this proceeding involved only the question of the right to immediate possession or control of the child. See Chamblee v. Chamblee, Ky., 248 S.W.2d 422. At the hearing the court would not allow the introduction of evidence on the question of ultimate custody. The judgment does not disclose the basis of the trial judge's ruling, although the record indicates it was his opinion that the welfare of the child played some part and that "guardianship does not carry with it custody".

■ Perhaps in no other field is the law so uncertain and flexible as in that involving the custody of children. In Chamblee v. Chamblee, Ky., 248 S.W.2d 422, an attempt was made to distinguish between the types of proceedings wherein a party asserts the legal right to immediate and temporary possession and those proceedings of an equitable nature where a court is called upon to decree a more permanent placement of the child best serving its ultimate welfare. Due to differing factual situations which involve such matters as change of residence or domicile, long lapse of time, and conflicting custody awards, the procedural distinctions are not always maintained. However, where the facts present a clear-cut issue as to which of two competing parties has the legal authority to have a child in his possession, we think this issue properly may be resolved in a habeas corpus proceeding wherein the legal right is enforced. This is such a case (and was so treated by the trial court). The question involves a determination of which state had jurisdiction of this child at the time this suit was filed.

■ It cannot be disputed that the child's domicile was in Indiana. This is determined by the domicile of the last surviving parent. Garth v. City Sav. Bank, 120 Ky. 280, 86 S.W. 520; Johnson v. Smith, 94 Ind.App. 619, 180 N.E. 188; and 32 A.L.R.2d 865. Other things being equal, the courts of Indiana would have jurisdiction to make a custody award, and the fact that the child was temporarily residing in Kentucky in no way affected that jurisdiction. As said in 9 A.L.R.2d 442:

"Where there is no outstanding judicial award of custody by a foreign court, the courts are unanimous in holding that even though the children may be physically without the state, power in the court exists to make an award of custody of children domiciled within the state."

See also Callahan v. Callahan, 296 Ky. 444, 177 S.W.2d 565; Shippen v. Bailey, 303 Ky. 10, 196 S.W.2d 425; Abbott v. Abbott, 304 Ky. 167, 200 S.W.2d 283.

■ This child's domicile continued in Indiana after the father's death. An Indiana court, whose jurisdiction is not questioned, by a valid order appointed appellant as guardian. That court followed the express wishes of the last surviving parent in making this appointment and we believe those wishes (expressed by the person most interested in the child's welfare) should, except for most compelling reasons otherwise, be respected by our Kentucky courts. Therefore, as of February 15, 1966 (the date of the order), appellant had the legal right to possession and control of this child. We can discover no ground on which to adjudge that appellees acquired a better right.

It is not contended that the March 2 order of the Monroe County Court appointing the appellee grandmother as guardian accomplished this. See Griffin v. Harmon, 35 Ga.App. 40, 132 S.E. 108. The argument is that because the child was physically present in this state, the trial court had full power to make an independent custody award in the interest of its best welfare, and that the grandparents have a right of custody superior to that of a statutory guardian. We do not think either of these propositions is sound under the circumstances existing in this case.

As we have before intimated, the nature of this proceeding limited the issues involved. This is not a proceeding to determine the ultimate custody of the child. As we have also noted, the trial court would not permit evidence on this issue.

█ Ignoring the procedural aspects, it is questionable that any Kentucky court could or should properly undertake to determine the ultimate custody of this child. While we are fully aware of the extreme jealously with which states guard their right to control infants, this authority should be exercised only when a state has acquired a recognizable parens patriae interest in the child predicated upon bona fide residence or domicile.

█ We do not believe that the temporary presence of Timothy in Kentucky was sufficient under the circumstances shown to give this state what may be termed custodial jurisdiction of the child. He was brought here to attend a funeral and was kept here a month by his grandparents. This did not convert him into a bona fide Kentucky resident, much less change his domicile. It would simply lead to chaos if every state in which an infant set foot asserted exclusive jurisdiction to determine his custodial destiny. See Wells v. Andrews, 60 Miss. 373; and 9 A.L.R.2d 434. It would not make sociological or legal sense.

This case is clearly distinguishable from the recent case of Brengle v. Hurst, Ky.,

408 S.W.2d 418. That was a habeas corpus proceeding to enforce an Indiana judgment awarding custody of two children to the father. The custody of the children had formerly been awarded to the mother and she and the children had lived in Kentucky for five years. We recognized that the mother and the children had in good faith established a residence in Kentucky (actually domicile). Kentucky had acquired a parens patriae interest in their welfare and this state was not required to give full faith and credit to the Indiana judgment. In effect the decision stands for the proposition that since the children were domiciled in Kentucky, Indiana had lost jurisdiction to determine the matter of custody and therefore the father had no legal right of possession. This really ended the habeas corpus aspect of that case (although the opinion suggested a possible further hearing in the Kentucky court on the question of the childrens' ultimate custody). In all other cases we have examined where the trial court went into the question of the child's best welfare and its ultimate custody, jurisdiction was assumed on the ground that the child was a bona fide resident of, or domiciled in Kentucky.

█ As we have pointed out, since the child had only a temporary residence here, the state of its domicile had the prior right to place it with the statutory guardian nominated by the father. Without going into the question of full faith and credit, we believe as a matter of comity our Kentucky courts should enforce this valid order of a sister state court. Certainly it does not constitute "an improper infringement on the interests" of this state, as was determined in Brengle.

We find no merit in appellees' contention that the appellee grandparents have a superior right to that of the child's statutory guardian. They rely upon Fletcher v. Lippert's Guardian, 251 Ky. 469, 65 S.W.2d 450, and Ridgeway v. Walter, 281 Ky. 140, 133 S.W.2d 748. Those cases are clearly distinguishable. Both were equity proceed-

ings. In both the child involved was domiciled in Kentucky. In both the statutory guardian was a stranger. None of those features is present in the case before us.

Since the entry of the Indiana order appointing appellant statutory guardian, no change of circumstances has created any legal right in appellees to the custody of this child. Nor do we think the circumstances would justify a Kentucky court in assuming jurisdiction to determine the matter of ultimate custody (which the trial court did not undertake to do). We recognize Indiana's superior jurisdictional interest which created in appellant the better legal right to immediate possession of this child.

The judgment is reversed, with directions to enter a judgment for appellant directing appellees to surrender Timothy Paul Johnson to her.

WILLIAMS, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE and STEINFELD, JJ., concur.

MONTGOMERY, J., dissents.