**Mary Frances BATCHELOR, Appellant,**

v.

**Donald E. FULCHER, Appellee.**

Court of Appeals of Kentucky.

June 2, 1967.

Dissenting Opinion June 9, 1967.

As Modified June 13, 1967.

Earle M. Nichols, Nichols & Nichols, Madisonville, for appellant.

Carroll S. Franklin, Franklin & Gordon, Madisonville, for appellee.

MONTGOMERY, Judge.

This contest is between Mary Frances Batchelor, the mother, and Donald E. Fulcher, the father, over the custody of their children, Donald Wayne Fulcher, born September 28, 1960, and Carla Gaile Fulcher, born November 5, 1962. The action by the mother was dismissed on motion of the father, challenging the jurisdiction of the Hopkins Circuit Court, on the ground that he had obtained an order for the children's custody in a divorce action granted in Indiana.

The mother, on appeal, contends that the Indiana judgment was void and that even if not void, it should not be enforced in a

child custody case. The latter point is decisive.

The parties were married on November 7, 1959. Both are natives of Hopkins County. During part of the period of their marriage they lived in Kentucky. Then they lived in Evansville, Indiana, for about two years before moving to California in January or February 1964. Appellant separated from her husband in California in November 1964, and went to Florida, taking the children with her.

Fulcher followed her to Florida, stayed a few days, obtained the children without her consent, she claims, and returned to Hopkins County. In January of 1965, Fulcher took the children to California. He returned to Kentucky in February, and after a short stay he went to Gary, Indiana, taking the children with him.

In March 1965, the parties met in Hopkins County. The son was turned over to appellant. She later took him to Florida. The daughter had been left in Indiana. On July 2, 1965, the father took the son from the mother in Florida by force, she claims, and returned to Indiana.

On February 8, 1965, the mother sued for divorce in Lake County, Florida. On April 2, 1965, the father filed an answer in that action together with waiver of notice sworn to before a notary public. On July 14, 1965, the mother was granted a divorce. The question of custody of the children was not raised or adjudicated in the Florida action.

On July 22, 1965, the father sued for divorce and custody of the two children in Lake County, Indiana. The mother was proceeded against by publication as a nonresident. She disclaims any notice or knowledge of this proceeding. Shortly after September 21, 1965, the return day for the nonresident process, the husband was granted a divorce and the custody of the two children, who were with him.

On the same day that appellee sued for divorce, July 22, 1965, appellant married her present husband, Raymond Batchelor. They have lived in Hopkins County since shortly after their marriage.

Appellant and her husband testified that in July 1966, appellee called appellant and told her to come to Gary, Indiana, and get the children. Appellant said that appellee assigned as the reason that he was having trouble with his bride of three weeks. Appellant and her husband said that they arrived in Gary about 8 a. m., and stayed until about 2 p. m. During this time appellee and his bride were preparing the children and their clothes to return to Kentucky with appellant and her husband. Appellee claims that the children were taken from his home without his knowledge or consent. The children have remained with appellant in Kentucky since July 3, 1966.

Appellant filed this action July 7, 1966, by which she seeks to have the custody awarded to her. Personal service was had on appellee when he returned to Kentucky to get the children.

Three questions are inherent in this case: Was the Hopkins Circuit Court bound to give full faith and credit to the Indiana custody order in the absence of personal service on the mother? Did the Hopkins Circuit Court have jurisdiction to determine the custody of the children? and, If so, what is the controlling factor in such determination?

In May v. Anderson, 345 U.S. 528, 73 S. Ct. 840, 97 L.Ed. 1221, the husband obtained a divorce and an order for the custody of the children in Wisconsin without obtaining personal service on the mother who was then in Ohio. Afterward, the husband sought to obtain the custody of the children from the mother in a proceeding in Ohio. He relied on the Wisconsin custody order.

In rejecting the Wisconsin custody order, the United States Supreme Court, speak-

ing through Mr. Justice Burton, stated and answered the question thus:

" * * * we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her in personam. Rights far more precious to appellant than property rights will be cut off if she is to be bound by the Wisconsin award of custody.

" 'It is now too well settled to be open to further dispute that the "full faith and credit" clause and the act of Congress passed pursuant to it do not entitle a judgment in personam to extraterritorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound.' Baker v. Baker, Eccles & Co., 242 U.S. 394, 401, and see 403, 37 S.Ct. 152, 155, 61 L.Ed. 386 [391, 392]; Thompson v. Whitman, (U.S.) 18 Wall. 457, 21 L.Ed. 897; D'Arcy v. Ketchum, (U.S.) 11 How. 165, 13 L.Ed. 648.

"In Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412, supra, and Kreiger v. Kreiger, 334 U.S. 555, 68 S.Ct. 1221, 92 L.Ed. 1572, supra, this Court upheld the validity of a Nevada divorce obtained ex parte by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under the prior decree of another state. In the instant case, we recognize that a mother's right to custody of her children is a personal right entitled to at least as much protection as her right to alimony.

" * * * We find it unnecessary to determine the children's legal domicile because, even if it be with their father, that does not give Wisconsin, certainly as against Ohio, the personal jurisdiction that it must have in order to deprive their mother of her personal right to their immediate possession."

See also Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240; People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133.

■ The decree of the Indiana court did not validly deprive her of a right to seek the custody of her children in the Hopkins Circuit Court.

Three concurrent bases of jurisdiction have generally been recognized in cases of this character. They are: domicile of the child in the state; presence of the child in the state; and personal jurisdiction over the contending parties. See Restatement of the Law, Second, Conflict of Laws, Proposed Official Draft, May 2, 1967, Section 79, Pages 294–300, for a full discussion and citation of authorities. It is therein observed that: "In point of fact, each of these bases of judicial jurisdiction provides a reasonable and suitable basis upon which a court may proceed in a proper case."

■ In the instant action there are present two bases for jurisdiction: presence of the children in Hopkins County, Kentucky, and an action brought by the mother with personal service on the father. The Hopkins Circuit Court had jurisdiction to determine the custody of the children.

■ Having resolved the first two questions, the answer to the third is easy. The welfare of the child is always the overriding consideration in the determination of its custody. This is the reason for the rule stated in May v. Anderson, supra. Wells v. Wells, Ky., 406 S.W.2d 157, and 412 S.W. 2d 568; McLemore v. McLemore, Ky., 346 S.W.2d 722, 92 A.L.R.2d 691.

■ Accordingly, it was error to dismiss appellant's action. The Chancellor should have heard testimony and determined which party in the best interest of

the children should have custody. This is a factual issue to be resolved by the Chancellor. Brengle v. Hurst, Ky., 408 S.W.2d 418. Cf. Walden v. Johnson, Ky., 417 S.W.2d 220.

Judgment reversed.

WILLIAMS, C. J., and MILLIKEN, PALMORE, and STEINFELD, JJ., concur.

HILL and OSBORNE, JJ., dissent.

OSBORNE, Judge (dissenting).

The majority opinion holds we are not required to give full faith and credit to a child custody decree entered in Indiana, where the mother was not personally served, even though the children and father were all domiciled there and the children personally present in Indiana when the decree was entered.

We attempt to justify our action by saying since the mother and children are presently before this court and the best interest of the children seem to us to demand it, we have jurisdiction to disregard the Indiana decree and proceed as if it were never entered. I do not believe this is a proper and accurate statement of the law generally or of the law of this state. It is nothing more than a formal adoption of the rule of "seize and run."

The central problem is whether the Indiana judgment should be accorded full faith and credit by the courts of Kentucky and incident to a solution of this problem is the question of jurisdiction. If Indiana had jurisdiction at the time it entered its decree then Kentucky is required under article 4, section 1 of the Constitution of the United States to give full faith and credit to the Indiana decree. The majority opinion cites as authority for its holding May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221. The one important single factor ignored by the majority opinion is that the

children in the instant case were present in Indiana at the time the decree was entered. This was not so in May v. Anderson, supra, where the children were residing in Ohio with their mother at the time the Wisconsin court granted custody to the father. The Wisconsin court based its jurisdiction upon the tenuous proposition that the technical domicile of the child is the same as the domicile of the father. Therefore, any court where the father is domiciled would have jurisdiction to grant custody of his children wherever they might be. In May v. Anderson, supra, jurisdiction is based upon technical domicile. In the present case jurisdiction is based upon actual domicile and presence. They are distinguishable. There are other factors concerning May v. Anderson which should properly be brought out. First and foremost is the fact that what purports to be the opinion of the majority was not concurred in by a majority of the members. The opinion was written by Justice Burton and concurred in by three other justices. Justice Frankfurter wrote a separate concurring opinion in which he does not agree with the basis of the majority opinion. Justices Reed and Minton dissented and Justice Clark took no part in the case. However, since our majority places such great stress upon this one case, it will be necessary to review it at some length.

As above stated, the father was a resident of Wisconsin, the mother of Ohio. The parties were· married in Wisconsin and lived there until the onset of trouble. In December of 1946 the wife left the husband and took the children to Lisbon, Ohio, to think over her future course. By New Year's Day, she called her husband and informed him that she had decided not to return to Wisconsin. A few days thereafter he filed suit in Wisconsin seeking an absolute divorce and custody of the children. The only service of process upon the wife was a delivery to her in Ohio of a copy of the Wisconsin summons and petition which made no mention of the fact that there was a proceeding for the custody of the children. She entered no appearance and took

no part in the proceedings. Justice Burton writing for himself and three other members of the court held that the wife was not bound by the Wisconsin decree and cites for authority Weber v. Redding, 200 Ind. 448, 454–455, 163 N.E. 269, 271. Also, Sanders v. Sanders, 223 Mo.App. 834, 837–838, 14 S.W.2d 458, 459–460; Carter v. Carter, 201 Ga. 850, 41 S.W.2d 532. Without reviewing these authorities in detail, we believe it will suffice to point out that in none of them were the children present in the state at the time of the entry of the judgment. As an example, in Carter v. Carter, supra, the court points out that at the time the judgment was entered by the South Carolina court granting custody, "the child was in Georgia in the custody of his mother where he had been for approximately two years with the exception of two or three days during which the father had surreptitiously taken the child out of the state."

In Sanders v. Sanders, supra, the court points out:

"We have found no case in Missouri, however, which holds, or even intimates, that the circuit court has jurisdiction to give the custody of minor children to one spouse or the other, at the time of granting a decree of divorce, when service is obtained on defendant in such suit by publication, and when the children were with defendant in another state both at the time the petition was filed and when the divorce decree was entered."

In Weber v. Redding, supra, the Indiana court held the decree of Ohio invalid as it related to the custody of the child "for the reason that the court did not have jurisdiction of either the appellant or the child."

It is apparent from the foregoing that the ruling of the court in May v. Anderson, supra, is limited to a situation where the child is not present in the jurisdiction of the court when the order is entered. Not until the present case has any court ever refused to grant full faith and credit to a judgment awarding custody when the children were before the court when the order was entered. This is an alarming situation and brings about what could be a catastrophic result for it in effect holds that all custody orders in this and other states based upon constructive service are not entitled to full faith and credit, even though the children were before the court at the time the order was entered.

Justice Jackson in his dissent in May v. Anderson summarizes this problem as follows:

"I am quite aware that in recent times this Court has been chipping away at the concept of domicile as a connecting factor between the state and the individual to determine rights and obligations. We are a mobile people, historically on the move, and perhaps the rigid concept of domicile derived by common law from feudal attachment to the land is too rigid for a society so restless as ours. But if our federal system is to maintain separate legal communities, as the Full Faith and Credit Clause evidently contemplates, there must be some test for determining to which of these a person belongs. If, for this purpose, there is a better concept than domicile, we have not yet hit upon it. Abandonment of this ancient doctrine would leave partial vacuums in many branches of the law. It seems to be abandoned here.

"The Court's decision holds that the state in which a child and one parent are domiciled and which is primarily concerned about his welfare cannot constitutionally adjudicate controversies as to his guardianship. The state's power here is defeated by the absence of the other parent for a period of two months. The convenience of a leave-taking parent is placed above the welfare of the child, but neither party is greatly aided in obtaining a decision. The Wisconsin courts cannot bind the mother, and the Ohio courts cannot bind the father. A state of the law such as this, where possession apparently is not

merely nine points of the law but all of them and self-help the ultimate authority, has little to commend it in legal logic or as a principle of order in a federal system."

" * * * In spite of the fact that judges and law writers long have recognized the similarity between the jurisdictional requirements for divorce and for custody, this decision appears to equate the jurisdictional requirements for a custody decree to those for an *in personam* money judgment. One reads the opinion in vain to discover reasons for this choice, unless it is found in the remark that for the wife 'rights far more precious * * * then property will be cut off' in the custody proceeding. The force of this cardiac consideration is self-evident, but it seems to me to reflect a misapprehension as to the nature of a custody proceeding or a revision of the views that have heretofore prevailed.

" * * * I fear this decision will author new confusions.[1] The interpretative concurrence, if it be a true interpretation, seems to reduce the law of custody to a rule of seize-and-run. I would affirm the decision of the Ohio courts that they should respect the judgment of the Wisconsin court, until it or some other court with equal or better claims to jurisdiction shall modify it."

The Supreme Court of the United States had this problem before it in 1962 in Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed. 240, where the courts of Virginia dismissed a petition for custody upon the agreement of the husband and wife that they had settled the matter. Action was brought later in the courts of South Carolina for custody of the children. The Supreme Court held that under the full faith and credit clause the courts of South Carolina were not bound by the Virginia order because the Virginia order was not res judicata in Virginia. The importance of this decision is that in the course of it the court makes the following

statement "[w]hether the South Carolina court's interpretation of the Full Faith and Credit Clause is a correct one is a question we have previously reserved." In the footnote to this statement, the court cites Halvey v. Halvey, 330 U.S. 610, 91 L.Ed. 1133, 67 S.Ct. 903, in which it had held the courts of New York could modify a decree entered in Florida because such decree was open for modification in Florida. The Halvey case is significant because service of process was had upon the husband by publication and the court did not rule such process was invalid. So, we see that prior to May v. Anderson the court in Halvey v. Halvey did not hold process in child custody actions by publication invalid and again in Ford v. Ford, supra, subsequent to May v. Anderson, supra, pointed out this fact had been specifically reserved in Halvey v. Halvey. From the foregoing, it is apparent that a majority of the members of the court have never held a decree awarding custody of children in divorce proceedings not entitled to full faith and credit solely because process upon one of the parties was had by publication or other constructive service.

The question here presented has been much litigated in the several state courts. The increased mobility of the population has brought with it a corresponding increase in the volume of litigation. It should be stated at the outset there is considerable confusion in the cases dealing with the question occasioned by vague definitions and varying factual situations. The problem is stated most lucidly in 9 A.L.R.2d 439.

"The judicial solution of problems regarding the custody of children, or for that matter, of domestic relations generally, has never been wholly satisfactory, either from a social or a legal viewpoint, especially when multistate elements complicate the situation. There is little accord among the authorities as to the proper basis of jurisdiction to award custody of a minor child, and the cases deal-

---

1. In view of our decision this fear seems well founded.

ing with this question are in considerable confusion.

"One of the reasons for this conflict is the existence of various theories which have been developed by legal writers and sociologists to determine the correct basis for jurisdiction over the subject matter of a child custody proceeding and which dominate the courts' thinking in this class of cases.

"According to one theory which has been adopted by the Restatement and several leading textwriters the question is simply one of status and as such subject to the control of the courts of the state where the child is domiciled. The Restatement expresses this view with absolute clearness and certainty. It declares that the state of a child's domicil is the only one which has jurisdiction to award custody, and such an award will be recognized in all other states. A state in which a child is physically present, but not domiciled, may appoint a temporary guardian to protect it from harm, but such appointment, being an exercise of police power, has effect only within the state. The rationale of this position seems to be that custody is a matter of status and that the state of domicil is the one to properly determine it. Its weakness, in this writer's opinion, is that custody, unlike questions of divorce, does not fit well into the concept of status, as the court is not creating or dissolving a legal relationship, but is making a determination as to which of several contesting parties has the best claim to the child. However, more important from a practical point of view is the objection that the rules relating to domicil of an infant are frequently unrealistic, giving in extreme cases jurisdiction to a court within the territorial limits of which the child has never lived."

The authorities are generally in agreement that jurisdiction must be based upon the status of the child. The cases fall generally into three categories. Resting jurisdiction either on domicil, residence or presence. Most authorities agree that jurisdiction based upon domicil is valid.[2]

The Restatement of the Law, Conflict of Laws, § 117 provides:

"A state can exercise through its courts jurisdiction to determine the custody of children or to create the status of guardian of the person only if the domicil of the person placed under custody or guardianship is within the state."

Jurisdiction based upon residence is somewhat more confusing because of confusion inherent in the definition of residence and the similarity between residence and domicil. Again this age of mobility has caused great confusion in the old definitions. Professor Roy Moreland in a most excellent review of this problem in the Kentucky Law Journal points out the fact of changing concepts.

"What is the definition of domicil? The writer has never found a satisfactory one; the term is so unsettled and vague. It is true that it may be an individual's 'home' if his roots remain where he was born or he has settled permanently in one place, where he has his family and his work. But under modern conditions such an individual has become almost the exception rather than the rule. People move around and technical domicil may be a place with which there is little actual contact or presence." 54 KLJ, 172.

Most courts agree that jurisdiction in child custody cases may be based upon actual domicil or residence, but will not base jurisdiction upon presence alone. However, there are some exceptions even to this rule. In Kentucky, we apparently follow, or maybe it should be said at one time followed, the domicil rule. See Carter v.

---

2. Domicil here means actual and not technical.

Netherton, Ky., 302 S.W.2d 382, at page 384, where this rule is stated thusly:

"We have recognized that the right to the custody of a child is governed by the law of the state of the child's domicil. Rodney v. Adams, Ky., 268 S.W.2d 940, and the cases collected therein. See also McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 160 A.L.R. 396; Application of Enke, [129] Mont. [353], 287 P.2d 19. In view of the domicil of Carolyn Sue Carter in Indiana, the Chancellor's ruling in declining to make any further order concerning her custody was not an abuse of discretion."

The majority opinion herein cites Brengle v. Hurst, Ky., 408 S.W.2d 418. This case is not applicable to the set of facts presented before us. In the Brengle case the children were brought into Kentucky in 1961 and had made their home here for five years. Jurisdiction in that case was based upon residence. In the course of the opinion, the court states:

"We do not have a situation before us where these children have been removed from Indiana in order to get away from the courts of that state; we have rather an instance where a mother has taken the children to Kentucky and in good faith established *residence* here. Because these children have been citizens of Kentucky for several years, this state has an interest in their welfare, and should not relinquish that interest by default."

In the present case before us, the children were brought into this state on July 3, 1966, by the mother. This action was instituted four days later on July 7, 1966. By no stretch of the imagination can it be said that domicil or residence was established in this period of time, especially where the father contends that the children were stolen from Indiana.[3] We are basing jurisdiction on presence alone and I do not feel

this is sufficient. Exercising jurisdiction in domestic-relations cases, where the parties either reside or are domiciled in another state, encourages "court jumping." If the mother can in this case bring the children into Kentucky, institute suit in four days, and acquire valid legal custody, then what is to prevent the father from, in turn, illegally taking them into another state the day after entry of judgment in Kentucky and doing the same there? This process has no end. It can continue ad infinitum until all fifty states are used, each with a custody order inconsistent with the other forty-nine sister states. It behooves all courts to carefully examine these cases and not permit themselves to be used as pawns in the ever-raging domestic wars. The courts in most of our states are not in any way superior to the courts in the rest of our states, therefore it behooves none of us to criticize the rest of us and we should not "dupe" ourselves into believing that we can improve upon the judgment of the court who last handled the case simply because we have the power to grasp jurisdiction. Goodrich, Conflict of Laws, 136, pp. 422, 423 (3d ed.) sums up the problem about as well as it can be said:

"If the question of custody is passed upon by a court having jurisdiction, the great weight of authority holds that the decree is conclusive as to all matters up to the time of its rendition, and will be recognized and given effect in another state. This seems entirely sound. To allow relitigation of the question involves an unfortunate lack of confidence in the competence of the judicial officers of a sister state, and an unduly narrow interpretation of the full faith and credit clause of the Constitution."

For the foregoing reasons I am of the opinion that the Indiana court had jurisdiction based upon actual domicil and residence; that the judgment of that court should be afforded full faith and credit in

---

3. There are charges presently pending in Indiana against appellant for illegally removing the children from that state.

Kentucky, and our action taking jurisdiction upon presence alone was not warranted.

Recognizing that there is conflict in the law and this is unavoidable and further recognizing that there are few rules without exceptions, nevertheless, I believe that there are some definite conclusions that can be drawn from the foregoing cases and other authorities and they are as follows:

Orders pertaining to the custody of children in one state must be awarded full faith and credit in all other states subject to the following exceptions:

1. If the award is subject to be opened and altered in the state where rendered the doctrine of full faith and credit will not preclude it from being opened and altered in any other state having jurisdiction provided the modifications are made upon the basis of facts transpiring after the entry of the original order.

2. Technical domicil based upon nothing more than the domicil of the father is a doubtful basis for jurisdiction. And judgment based upon this fact alone will not be binding upon the mother without a valid service of process upon her. However, this question is much in doubt and the position of the court in May v. Anderson, supra, and the authorities therein cited are questionable.

No court of last resort prior to the majority opinion in this case has ever before held constructive service coupled with the presence of the children was not sufficient to grant such jurisdiction as to make a judgment entitled to full faith and credit.

The majority opinion on one hand takes the position that Kentucky has jurisdiction because the children are present in this state and the "welfare of the children is always the outstanding consideration" and on the other hand decrees that Indiana had no jurisdiction while acknowledging that the children were present there. Apparently what we call "the welfare of the children" is entitled to primary consideration in Kentucky and to no consideration in Indiana. I cannot understand this reasoning.

Therefore, I respectfully dissent.

EDWARD P. HILL, J., joins in this dissent.