**Benjamin G. YOUNG, Plaintiff,**

v.

**Margie Young MINTON, Defendant.**

**Civ. A. No. 7199.**

United States District Court,
W. D. Kentucky.
Louisville Division.

March 31, 1972.

George H. Logan, Hardy, Logan & Hastings, Louisville, Ky., for plaintiff.

Wallis H. Manske, Louisville, Ky., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALLEN, District Judge.

This action is submitted to the Court for a decision following an evidentiary hearing held on March 29, 1972.

The action was initiated by a Writ of Habeas Corpus filed in this Court on March 9, 1972. It is established by the petition and the exhibits filed with it, which were made a part of the evidence, that on September 29, 1971, the Honorable D. B. Herring, Judge of the General Court of Justice, District Court Division, for Cumberland County, North Carolina, entered an Order in File No. 70 CVD 2016 awarding custody of five minor children born of the marriage of petitioner and respondent to the petitioner, Benjamin G. Young. Two of the children included in the Order are Denise Michelle Young and Dennis Maireo Young, who are the subject matter of the petition for writ of habeas corpus.

The order recites that both plaintiff and defendant introduced evidence through witnesses and their own testimony and that one of the matters considered was a modification of custody orders heretofore entered in this matter. The order further recites that from the entry of a previous custody order on June 9, 1970, until September 29, 1971, the five children had been supervised, cared for, and maintained by Benjamin G. Young (hereinafter referred to as Mr. Young).

Paragraph (6) of the order recites that both plaintiff and defendant are found to be fit and proper persons to have the care, custody and control of the five minor children born of their marriage.

Paragraph (7) of the order recites that there has been no hearing as to the fitness of Denver Minton, the present husband of the respondent, Margie Young Minton, and that there is no evidence that he is not a fit person whom the children may visit and further recites that Mr. Young's refusal to permit visitation away from his home was in violation of an order entered on June 9, 1970, in that said order provided that the children not be removed from North Carolina by Mrs. Minton.

The Court concluded by granting reasonable visitation to Mrs. Minton, in addition to specific times of visitation, and also granted reasonable visitation rights to both the maternal and paternal grandparents of the children. However, visitation rights of Mrs. Minton were confined to her residence in Spring Lake, North Carolina, or at any other place in North Carolina.

On December 19, 1971, Mrs. Minton, while exercising her rights of visitation in North Carolina with Denise and Dennis Young, did not return them to Mr. Young and instead brought them to Fort Knox, Kentucky, where she now resides with her husband, Sgt. Minton. As a justification for her act, which is in violation of the North Carolina Court Order, it was testified to that Sgt. Minton is in fact the natural father of these two children. It was admitted, however, by Mrs. Minton that she did not testify to this effect in the September 29, 1971, hearing. Sgt. Minton testified that he was available to be called as a witness at that hearing but was not called.

Testimony was adduced by the Mintons to the effect that they have a nice home at Fort Knox, Kentucky; that Sgt. Minton earns $850 per month; that they love the children and the children love them. There was testimony of a pediatrician located at Fort Knox to the effect that Dennis, who is now almost two years and four months of age, having been born on December 3, 1969, is normal in all respects except that his vocabulary is somewhat deficient for a child of his age. He testified to the effect that the child had improved in his vocabulary considerably since he saw him on February 14, 1972, and that he was of the opinion that the child's deficiency in his vocabulary was due to a lack of stimulation by his custodians, who were Mr. Young and his present wife, Ruby Young, for a period of about five months prior to the child's removal to Fort Knox. Apparently, prior to that time actual custody was in Mr. Young's hands alone.

Mr. Wheeler, a probation officer from the North Carolina Court, testified to the effect that he was of the opinion that custody should be vested in Mrs. Minton. He had testified in the North Carolina hearing. He felt that the children were withdrawn when under the custody of Mr. Young but that they had greatly improved and were happy under the custodianship of Mrs. Minton. He stated that much of his information upon which he relied had been furnished by Mrs. Minton's relatives and that the Youngs and their relatives were rather uncommunicative in furnishing information.

A neighbor of the Mintons at Fort Knox testified that the children's conduct had greatly improved since the time of their arrival at Fort Knox.

She and the Mintons testified that Dennis had infections on his buttocks and that it was necessary for Mrs. Minton to apply desitin to remedy the situation. There was also testimony by Mrs. Collier, the mother of Mrs. Minton, to the effect that the Young household was in shambles; that the rugs were filthy; that the couch in the den contained urine on it; and that a dog was allowed to remain in the Young's dog pen which was not clean. She also testified to the effect that Dennis was kept in a pen by

the Youngs which had nothing but dirt in it.

The Youngs denied all of the allegations concerning any dirt and filth in their home, and no independent witness testified as to this condition. They denied any lack of care of the infant children, and Mrs. Young testified that she was not gainfully employed and that a baby sitter was not used often but when she was it was a woman somewhere in her sixties, whom Mrs. Collier claims is deaf.

Only one Federal case, other than those arising in the District of Columbia, has been cited to the Court as bearing on the question of whether or not this Court should confine itself to the bare question of whether there was illegal detention of the infant children or whether the matter should be broadened into a custody type proceeding with the Court taking on itself the right to modify, set aside or affirm the decree of the North Carolina Court. That case is United States ex rel. Schneider v. Sauvage, 91 F. 490 (Cir.Ct., W.D.Pa., 1899). In that case a writ of habeas corpus was prayed for by the vice consul of Belgium at the instance of a married couple who were subjects of Belgium living at Brussels. It was claimed that the child was illegally restrained without due process of law in Fayette County, Pennsylvania. The child had been born in Belgium and was the natural son of Mrs. Koster, one of the two petitioners. Mrs. Koster was not married to Mr. Koster at that time but married him two and one-half years after the birth of the child. She had given the child to her sister Maria when he was nine days old and the child had been nurtured by Maria up until the date of the filing of the application for the writ. Maria had taken the child to America when he was about two years old at the request of its natural mother. The child at the time of the writ was eight years of age.

The Court, in denying the writ, stated that no question was raised as to its jurisdiction but that its jurisdiction was that of the ordinary common law or statutory writ wherein the question was one of illegal restraint. The Court stated that there was no illegal restraint but that in view of the fact that the case was by a foreign government in behalf of one of its citizens, it would detail at length the reasons for giving the relief prayed for. The Court did cite authority on page 492 to the effect that although the Court is bound to free a person from all illegal restraints it is not bound to decide who is entitled to the guardianship or to deliver infants to the custody of any particular person, but that it may do so if it believes under the circumstances it ought to be done.

The Court then went on to state that the mother had voluntarily given custody to her sister and that it was to the best welfare of the child to remain with the sister in America in view of a virtual renunciation of the parental relationship by the mother.

■ This Court has already decided that by virtue of the fact that Fort Knox is a Federal reservation and that Kentucky has ceded all jurisdiction over it to the United States, jurisdiction vests here. See K.R.S. 3.030; Lathey v. Lathey, Ky., 305 S.W.2d 920 (1957); and Title 28 U.S.C. § 2241.

■ There is no binding precedent on this Court as to whether or not it should follow Kentucky law in deciding this case or be free to formulate its own considerations of Federal law. Technically, the Court is not sitting as a diversity court and is not bound to follow Kentucky law, but is of the opinion that it would be appropriate to use it as a vehicle in determining this case. Of course, in so doing the Court will take cognizance of several United States Supreme Court decisions which will be referred to in this Opinion and which may have some effect on the disposition of this case.

The most recent decision of the Kentucky Court of Appeals bearing on the matter is that of Galloway v. Pruitt, Ky., 469 S.W.2d 556 (1971). In that case the child concerned was the daugh-

ter of the Galloways. They appealed from a decision of the Hopkins Circuit Court in Kentucky granting a writ of habeas corpus and awarding custody of the child to the appellees, Henry Pruitt and his wife. Appellees, however, were not represented by counsel in the Court of Appeals.

While living in Indiana the Galloways allegedly delivered the custody of their daughter to the appellees. Two months later the appellees instituted legal proceedings in the appropriate Indiana court seeking a confirmation of their arrangement with the appellants concerning their adoption and full custody of the child. The Indiana court granted temporary custody to the appellees, but the appellants took the child and returned with it to Hopkins County, Kentucky. Subsequently the Indiana court entered its order awarding permanent custody to the appellees.

The habeas corpus proceeding in Kentucky was not filed until five months after the child's departure from Indiana. The appellants sought a full hearing in the Hopkins Circuit Court on their right to custody. A trial judge refused to admit testimony as to the best interest of the child except within the narrow limits set out in Scott v. Scott, Ky., 445 S.W.2d 871 (1969), relating to the possibility of imminent danger of harm to the child.

On pages 558 and 559 the Court, in *Galloway,* takes the view that it is inappropriate and unreal that proceedings to determine the right of immediate possession of a child, however denominated, be consigned to the narrow confines of traditional habeas corpus. However, the Court then refers to the granting of a forthwith hearing as if the principles of habeas corpus were applied and the dealing with the issues expeditiously within the framework of due process.

At page 558 it is stated that legally unwarranted deprivation of the immediate right to possession of a child shall ipso facto be regarded as irreparable in-

jury for which no adequate remedy exists so far as those precepts relate to injunctive proceedings. The Court then advises the trial courts to be mindful of the precepts enunciated in Walden v. Johnson, Ky., 417 S.W.2d 220 (1967), Brengle v. Hurst, Ky., 408 S.W.2d 418 (1966), and numerous cases of similar import. The opinion then goes on to say that the trial courts shall be guided accordingly as to whether there should be a full blown hearing and adjudication on ultimate custody based on the best interest of the child. The Court states further that none of the procedural rules which relate to pure habeas corpus proceedings shall apply to a proceeding for custody of a child.

In the case of Batchelor v. Fulcher, Ky., 415 S.W.2d 828 (1967), the Court of Appeals states that there are three concurrent bases of jurisdiction recognized in prior custody cases. They are domicile of the child in the state; presence of the child in the state; and personal jurisdiction over the contending parties.

The Court is cognizant of the fact that custody decrees are not immutable and that a court in one state can modify a custody decree made in another state. New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947).

In Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962), the Supreme Court unanimously decided that a Virginia judgment refusing to grant custody of minor children to a father in compliance with a written agreement of the parents was not res judicata in Virginia and did not bar South Carolina from later granting full custody to the mother, the children and mother being residents of South Carolina at that time. The Supreme Court held that the Court of South Carolina was not precluded by the Full Faith and Credit Clause in determining the best interest of these children and entering a decree accordingly.

In the case of Walden v. Johnson, Ky., 417 S.W.2d 220 (1967), the child in question who was a subject of a habeas corpus proceeding was six years old and resided in Indiana all of his life with the exception of the thirty six days preceding the application for the writ. The Court held that the temporary presence of Timothy in Kentucky was insufficient to give Kentucky custodial jurisdiction of him. It was stated that it would simply lead to chaos if every state in which an infant set foot asserted exclusive jurisdiction to determine his custodial destiny.

The presence of the two children in this case in Kentucky is due to an illegal act of their mother. It was established that because of their removal to Fort Knox and the difficulties attendant upon securing the children's return to North Carolina by criminal processes, the application for writ was delayed for a period of two and one-half months after the children's arrival at Fort Knox. Jurisdiction over the parties was, of course, acquired by reason of the refusal of the Mintons to deliver back the two children to Mr. Young, who thereupon filed this proceeding.

The Court is inclined to the view that this case is analogous to that of Walden v. Johnson, supra. It will be recalled that in that case the infant was located in Kentucky for a mere period of thirty six days and that he was brought into Kentucky by his grandparents following the funeral of his father in Indiana. Even though there was no order which the grandparents violated by bringing Timothy into Kentucky at the time of his removal, the Court held that Kentucky had not acquired a sufficient parens patriae interest in the child to warrant their courts passing upon his custody.

In the instant case it is obvious that this Court's jurisdiction would not have been called into play had it not been for the illegal act of Mrs. Minton in removing the children to Kentucky in defiance of an order entered by a North Carolina Court which had jurisdiction over both her and the children at the time the order was entered.

It is the conclusion of this Court that based on the guiding principles of *Walden* and *Galloway* that Mr. Young is entitled to have the children returned to him without this Court giving full consideration to the custodial arguments made by the Mintons.

In the case of Chamblee v. Rose, 249 S.W.2d 775 (Ky., 1952), the two parties and their children resided in Alabama. The mother was granted a divorce there and awarded custody of the children but the decree prohibited her from removing them from the State for a period of longer than two weeks. In July 1951 the father applied for modification of that judgment on the ground that the mother was no longer a fit person to have their care. Immediately after being served with summons, the mother left the state with the children, moving to Kentucky. In the habeas corpus proceeding, Chamblee v. Chamblee, 248 S. W.2d 422 (Ky., 1952), the Court of Appeals held that the Alabama Court's judgment awarding custody to the father should be given full faith and credit and that the Whitley County Court should not have undertaken to redetermine the question of permanent custody.

Immediately after the issuance of a mandate in the first *Chamblee* case, the mother in the second *Chamblee* case filed a petition in equity in the Whitley Circuit Court in Kentucky where she asked for permanent custody on the grounds of changed conditions. The Court of Appeals held that the Kentucky Court did not have jurisdiction because the children were legally domiciled in Alabama and granted a writ of prohibition.

While the two *Chamblee* cases may have been undermined to a considerable

extent by *Galloway, Walden, Brengle* and *Batchelor,* as well as the United States Supreme Court cases cited on page 6 of this opinion, the Court is of the opinion that it should not entertain full custody jurisdiction at this time. Basically, this belief is bottomed on two grounds. First, the children have had only minimal contacts with Fort Knox and the Federal jurisdiction. Secondly, this Court is not equipped with the necessary social service workers and personnel, as well as the day by day experience which the state courts have in formulating decisions as to custody matters.

In light of the above considerations, the Court believes that it would be inappropriate to express a decision on the merits as to the custody features of this case. North Carolina is the appropriate forum in which to raise those questions. The Court there will have an opportunity to hear the testimony of all the persons who are called as witnesses who have known the parties to this action and who know their physical surroundings, their character and the training and discipline afforded to the children with the exception of that afforded them during the past three months by the Mintons at Fort Knox.

■ Of course, if this Court thought that there would be any serious harm that would arise to them by rendering their immediate custody to Mr. Young, it would not do so. See Scott v. Scott, 445 S.W.2d 871 (Ky., 1969).

In conclusion, the Court holds that the Writ of Habeas Corpus should be made absolute and Mrs. Minton or her duly authorized agent directed and ordered to turn the children over to the United States Marshal on April 7, 1972, at 1:30 p. m. Mr. Young or his duly authorized agent is authorized to pick up the children at 1:45 p. m. but is not to appear in the Marshal's office before that time.

An Order to this effect will be entered by the Court.